# OREGON OCCUPATIONAL SAFETY AND HEALTH DIVISION,
*Petitioner,*

*v.*

# MAD CREEK LOGGING,
*Respondent.*

(SH-92021; CA A76218)

861 P2d 365

Jas. Adams, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

George Goodman, McMinnville, argued the cause for respondent. With him on the brief were Jerry K. Brown and Cummins, Brown, Goodman, Fish & Peterson, P.C., McMinnville.

454

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

The Oregon Occupational Safety and Health Division (OR-OSHA), seeks review of an order of a Workers' Compensation Board referee setting aside OR-OSHA's assessment of a penalty for conduct that allegedly violated two of OR-OSHA's administrative rules, OAR 437-80-220 (22) and OAR 437-80-105. The penalty is reviewable by the referee pursuant to ORS 654.078. The Workers' Compensation Board's referee's order is considered to be the final order of the Board. We reverse the Board in part, and remand for reconsideration.

■ Employer was hired by a third party to remove and load felled trees from some property. OR-OSHA's safety compliance officer (SCO) inspected the work site. To accomplish its job, employer used a yarder and a loader. The yarder was secured by guy wires that were wound on large spools.

OAR 437-80-220(22) provides:

"Wire rope shall be wound on drum spools in a manner to prevent excessive wear, kinking, chafing or fouling."

The SCO inspected the spools, and noticed that the wire was wound improperly, damaging it. Employer was issued a citation for violating OAR 437-80-220(22). The parties agree that, in order to establish a violation, OR-OSHA must show that an employee was exposed to an unsafe condition as a result of a failure to comply with the standard. Employer agrees that the spool was improperly wound, but contends, and the referee found, that OR-OSHA has failed to establish a violation of the rule, because it has not presented evidence of employee endangerment. *See, e.g., Secretary v. Bechtel Corp.*, 2 OSH 1336, 1337 (1974). The referee found:

"Here, neither the lay nor documentary evidence established any actual exposure to [employer's] employees, as a result of the improperly spooled wire. At most, defendant presented evidence that the improperly spooled wire wire [*sic*] could result in a hazzard [*sic*]. According to the testimony of Mr. David Wooley, however, even properly spooled wire could result in a hazzard [*sic*]. Wooley further testified that without performing a 'pull test,' he could not estimate the degree of damage to the wire."

OR-OSHA contends that the referee's conclusion is "legally flawed," because his analysis requires a finding of an "actual hazard," *i.e.*, direct physical endangerment, as opposed to a potential hazard, before a citation will issue. That is not a correct reading of the referee's order. Certainly, a failure to comply with a safety rule that gives rise to a potential risk of injury to an employee is a violation, even in the absence of evidence that the employee was actually in the zone of danger. The point of the referee's decision is that the evidence fails to show damage to the cable as a result of the violation that could create a risk to employees, either actual or potential. There is substantial evidence to support the referee's findings, and they require that the citation under OAR 437-80-220(22) be dismissed.

■ In his inspection of the work site, the SCO noticed that certain standing trees in the area were "wildlife trees" which were dead on top and contained dead limbs. The guy wires securing employer's yarder were in front and in back of the wildlife trees, and some of the employees were working in close proximity to the wildlife trees.

OAR 437-80-105(1) provides:

"Danger trees within reach of landings, haul roads, rigging or work areas shall be felled *before the regular operations begin* or work shall be arranged so that employees will be constantly in the clear." (Emphasis supplied.)

The wildlife trees on employer's work site are "danger trees" within the meaning of the rule. Landings and riggings are equipment used in yarding operations. Accordingly, on its face, OAR 437-80-105(1) encompasses work sites on which yarding and loading are taking place.

OR-OSHA cited employer for yarding and loading timber in close proximity to unfelled wildlife trees. The referee set the citation aside on the ground that OAR 437-80-105(1) applies only to work sites on which timber cutting and other power saw activities are taking place. The referee based his decision primarily on the organization of the administrative rules within Division 80, which relate to the entire logging industry. The table of contents of the rules and their text are broken down into subheadings. The first subheading is entitled "General Requirements." Subsequent

subheadings deal with specific logging operations, including "Timber Cutting and Other Power Saw Usages," "Climbing Equipment, Selection and Preparation of Spars," "Rigging," "Logging Machines," "Guylines, Skylines, Spars and Anchors," "Yarding, Swinging and Loading," "Transportation," "Log Dumps and Ponds," and "Signalling and Signal Systems." The referee concluded that, because OAR 437-80-105(1) is included within a group of rules under the heading "Timber Cutting and Other Power Saw Usages," OAR 437-800-090 *et seq*, it is inapplicable to the work site here, which involved only yarding and loading operations. The referee also noted that there are rules under the heading "Yarding, Swinging, and Loading," OAR 437-80-325 *et seq*, and that one of those rules, OAR 437-80-330(11), mentions danger trees, and provides:

> "*When approaching or working around hang-ups*, employes shall approach from above the hang-up, and be alert for the danger of logs rolling or sliding, widow makers and danger trees." (Emphasis supplied.)

The referee ruled that OAR 437-80-330(11) is the controlling rule regarding danger trees, because it is more specific to the circumstances, as it is contained within the heading "Yarding, Swinging, and Loading."

We are not persuaded that it was necessary for the referee to decide which of the two rules is controlling. The rules are not inconsistent with each other or otherwise in conflict. They address different subject matters. OAR 437-80-105 states the safety precautions to be taken when danger trees are "within reach of landings, haul roads, rigging or work areas." OAR 437-80-330(11) states the precautions to be taken while working around "hang-ups." There is no indication in this record that "hang-ups" were present on employer's work site. Accordingly, OAR 437-80-330(11) is not applicable. The only question is whether OAR 437-80-105(1) is applicable to employer despite the fact that the logging operation it conducted was not timber cutting.

OR-OSHA takes the position that all of the rules within Division 80 are applicable to the logging industry generally, and that the headings of the administrative rules do not limit their applicability to specific activities.

It contends that, although when evaluating a work site OR-OSHA will look primarily to the rules regarding the specific logging operation, any rule that applies by its terms is applicable, even if it falls under a subheading that pertains to a different type of logging operation. OR-OSHA offered evidence to support its position that it considers its rules to be a unified whole and that it applies all of them, as called for by the circumstances.

Because they are not a part of the rules, rule headings are not generally relevant to determining the intentions of the drafter with respect to the application of a rule. In this case, however, the headings appear to reflect OR-OSHA's attempt to organize its safety requirements on the basis of risks associated with the various types of logging operations. The referee was justified in treating the organization of the rules as bearing on their intended application. We agree with OR-OSHA, however, that the fact that a rule is within a heading for one type of operation does not necessarily exclude its application to other activities, if OR-OSHA intends that the rule apply to other aspects of logging as well, so long as that intention is not inconsistent with the express terms of the rule. Here, OAR 437-80-105(1) requires the falling of danger trees "before the regular operations begin or work shall be arranged so that employees will be constantly in the clear." Although the rule is within the group of rules relating to timber cutting operations, on its face it could apply just as readily to other operations, including employer's yarding and loading operation. OR-OSHA's intention that the rules apply to all logging operations is not inconsistent with the rule itself, or with OR-OSHA's broad authority and responsibility to adopt rules that

> "[d]eclare and prescribe what devices, safeguards or other means of protection and what methods, processes or work practices are well adapted to render every employment and place of employment safe and healthful." ORS 654.035(1).

Accordingly, we conclude that the referee erred in substituting his understanding of OR-OSHA's rules for OR-OSHA's expressed intentions with respect to the "cross-application"

of its rules. We reverse and remand for reconsideration of the alleged violation of OAR 437-80-105(1).

Dismissal of citation under OAR 437-80-220(22) affirmed; reversed and remanded for reconsideration of violation of OAR 437-80-105(1).