Argued November 22, 1977, reversed January 16, reconsideration denied
February 24, petition for review denied May 16, 1978

ENOCH SKIRVIN AND SONS, INC.,
*Petitioner,*

*v.*

ACCIDENT PREVENTION DIVISION, *Respondent.*

(No. SH-76-334, CA 8682)

573 P2d 747

Scott M. Galenbeck, Springfield, argued the cause for petitioner. With him on the brief were Lively & Wiswall, Springfield.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

This case involves $15 and an issue of great importance to the administration of the Oregon Safe Employment Act, ORS 654.001 to 654.295 and ORS 654.991.

On March 28, 1976, petitioner was engaged in a so-called "gypo" logging operation. One of the Division's safety compliance officers was conducting an inspection of petitioner's premises when an employe drove a truck into the loading area, where one of the petitioner's owners was operating a log loader. While the loading was going on, the truck driver left the cab on the side opposite the loader and out of the operator's view. The inspector asked the driver whether he had a "hardhat." The driver said he did, reached into the truck, got the hat and immediately put it on. Failure to wear a hardhat is a non-serious violation of the law chargeable to an employer.[1]

A citation was issued. Petitioner timely filed a request for hearing pursuant to ORS 654.078(1); reference was made pursuant to ORS 654.290(2) to a referee for a determination based on the parties' affidavits. The referee issued an Opinion and Order (which is deemed a final order; ORS 654.290(2)(b)) upholding the citation, including the $15 civil penalty. Petitioner sought judicial review.

None of petitioner's officers or agents saw or were informed of the incident as it occurred, and the referee acknowledged "[t]he employer's knowledge is a material element in cases involving either serious or non-serious violations." Further, the referee accepted as true the employer's assertions that all employees, including truck drivers, were furnished hardhats and

---

[1] The history, administration, terminology and problems relating to the federal Occupational Safety and Health Act of 1970, 29 USC § 651 et seq, on which the Oregon statute is based, are discussed in D. Currie, *OSHA,* 1976 Am Bar Found, Res. J. 1107 (1976). The federal law is described by Professor Currie as "an interesting combination of bold legislative initiative and faulty drafting." *Id.* at 1160.

were directed to wear them at all times in the loading area when outside their trucks and that the particular employee had been so instructed. In an affidavit furnished by petitioner it was also said, "We have specifically carried out safety instructions with our employees as it relates to the above matter and other items." The referee's Opinion and Order makes no specific mention of this statement, but apparently the referee accepted it as true also. The referee agreed that the employer's responsibility is for those occurrences he can "reasonably be expected to foresee or control" and not as a guarantor of employee conduct. Nonetheless, the citation was upheld.

The basis for the referee's opinion is not easy to discern. He began by stating "The central question in knowledge cases is whether the employer actually knew of the violation or should have known (constructive knowledge) one would occur." He proceeded to set up and destroy a couple of straw men. To petitioner's assertion that it could not in fact have known the violation occurred, he replied that the contention was "a bit inconsistent" because petitioner denied any duty to continually and diligently observe its employees. He also said, "If it is contended that it's unfair for an SCO to observe an act but forego any determination that it may or may not constitute a violation until the employer is present and also observes it, no matter how brief the intervening time span, I am cited no law, administrative rule or equitable principle in support of it. * * *" Then, after acknowledging that the Division has the burden to make a prima facie case, including knowledge, he said, "While I find the employer's proximity to the employee who committed the act is not proof of actual knowledge, I find it constitutes prima facie evidence of constructive knowledge sufficient to overcome a motion to dismiss, * * * in making constructive knowledge an issue of fact."

With all due respect, that reasoning process makes very little sense. It is the equivalent of saying, "The

employer must have knowledge of the incident and is chargeable with having knowledge if he (that is, an agent or responsible employee) is near enough to have observed the incident even if it in fact was not observable." The utility of that proposition for the referee was as a preliminary to saying:

"At this point, because it is likely that probative evidence regarding constructive knowledge is of a type that is peculiarly within the employer's ability to secure, the burden of going forward, not the burden of persuasion, shifts to the employer."

After reviewing "[v]arious factors [that are to be] considered when determining whether the employer should have known of this violation" of both a general nature and relating to the particular employee, he held the petitioner failed to make a sufficient showing "that this violation represented an isolated, independent, uncharacteristic and therefore unpreventable event for which Skirvin should not be held accountable."

In reaching the conclusion that the burden so shifted to petitioner, the referee relied on *Brennan v. OSHRC (Alsea Lumber),* 511 F2d 1139 (9th Cir 1975). That case, which may have been the first one to come up involving an employer's liability under the federal Occupational Safety and Health Act of 1970, 29 USC § 651 et seq, for employee misconduct,[2] involved three serious and 17 non-serious violations cited by an inspector, some of which were based on "individual employee choices of conduct * * * which were contrary to the employer's instructions." Items of safety equipment "had been provided by the employer with instructions that they be worn." The court commented that there was "no evidence * * * tending to show that the employer had any knowledge respecting these instances of employee disobedience of established instructions. No offer was made to establish that the instructions were mere sham or that the employer had

---

[2] *But see Brennan v. OSHRC (Republic Creosoting Company)* 501 F2d 1196, (7th Cir 1974).

any on-going practice of permitting its instructions to be disregarded by its employees with impunity." 511 F2d at 1140, 41. The Commission's decision upholding these citations was vacated "for lack of evidence that the employer knew or had reason to know of [the violations'] existence."

In *Alsea Lumber* (which, incidentally, arose in Oregon), there was no question of fact, just as here. The employer did not have actual knowledge or a proven possibility of gaining knowledge at the time of the incident, just as here. The court there held that proof of the required knowledge is a burden of the agency, just as under the applicable Oregon rule the Division had the burden of proof in this case.[3] That burden was said to require in employee misconduct cases at least a prima facie showing of knowledge by the employer. The proof in *Alsea Lumber* that the employer knew or in the circumstances ought to have known that a particular employee was not wearing a flotation jacket while working around a log dump pond was just as strong as the proof here, yet the court said:

"* * * [W]e fail to see wherein charging an employer with a non-serious violation because of an individual, single act of an employee, of which the employer had no knowledge and which was contrary to the employer's instructions, contributes to achievement of the cooperation [between employer and employee] sought by the Congress." 511 F2d at 1145. (Bracketed words added.)

---

[3]Former OAR 436-85-635; now OAR 436-85-820:

"(1) APD has the burden of proving:
"(a) A denied violation.
"(b) The reasonableness of a contested penalty.
"(c) The reasonableness of a contested correction order.

"(2) The party who contests APD's grant or denial of a requested modification of the time for correction of a violation has the burden of proving that APD's decision is unreasonable.

"(3) The party who contests a proposed APD order that will grant, deny, modify or revoke a variance has the burden of proving that the proposed order is unreasonable.

"(4) The party having the burden of proving a fact must establish ' by a preponderance of the evidence."

The state urges upon us a series of cases decided by the federal Occupational Safety and Health Review Commission (*Floyd S. Pike Electrical Contractors, Inc.,* CCH Employment Safety & Health Guide, ¶ 21,584 (Rev. Comm'n 1977); *Green Construction Co.,* CCH Employment Safety & Health Guide, ¶ 21,235 (Rev. Comm'n 1976); *Robert J. Winzinger, Inc.,* CCH Employment Safety & Health Guide, ¶ 20,929 (Rev. Comm'n 1976)) which are claimed to show that the burden of showing a lack of knowledge shifts to the employer once the agency has made a prima facie showing of a violation and that the shifted burden includes establishing that the incident was an isolated occurrence which was unknowable or unforeseeable. *Pike* and *Winzinger* did not involve the same situations as in either *Alsea Lumber* or this case. *Green* did. The majority of the Commission adopted but did not set out the administrative law judge's opinion vacating the citation. The concurring commissioner said that a "presumption" of knowledge could only be used where the violation occurred on the employer's premises *and was visible* to a responsible representative of the employer.

Although we are not bound by the Ninth Circuit case, there is no Oregon authority in point, and the reasoning in *Alsea Lumber* is persuasive. There was no substantial evidence that petitioner knew or reasonably could be charged with knowing of the occurrence of the incident or that it failed to perform its statutory duty under the Act.

Reversed.

**THORNTON, J.,** dissenting.

Under the facts presented here, I believe the Accident Prevention Division sustained its burden of proof by showing a prima facie safety violation. *Green Construction Co.,* CCH Employment Safety & Health Guide, ¶ 21,235, at p 25,535 (Rev Comm'n 1976). The affidavit by the employer averring that it had issued a

hard hat to this employe at the time of employment, and had instructed him to wear it when outside his cab in log loading zones and had carried out unspecified "safety instructions," without more would not in my view overcome the Division's prima facie case.

Secondly, I find nothing unlawful or unreasonable in placing on the employer the burden of going forward with evidence spelling out specific affirmative action concerning its safety program in respect to this particular type of violation. *Robert J. Winzinger, Inc.,* CCH Employment Safety & Health Guide, ¶ 20,929, at p 25,134 (Rev Comm'n 1976). *See also, Strawn v. Commission,* 1 Or T R 98, 114, 151-55 (1962).

The construction placed on the Oregon Safe Employment Act, ORS ch 654, today by the majority, may seriously impair the Division's efforts to carry out its legislative mandate to provide maximum safeguards against industrial accidents.