Argued and submitted October 8, 1990, affirmed February 20, 1991

# ACCIDENT PREVENTION DIVISION,
*Respondent,*

*v.*

# ROSEBURG FOREST PRODUCTS,
*Petitioner.*

(SH-89107; CA A62768)

806 P2d 172

Kimberly D. Wallan, Medford, argued the cause for petitioner. With her on the brief was Cowling & Heysell, Medford.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Employer seeks review of an order under the Oregon Safe Employment Act, ORS 654.001 to ORS 654.259; ORS 654.991, that affirmed a citation issued to it for violation of OAR 437-40-030(1). We affirm.

The citation arose from the on the job death of Purcell at employer's complex in Dillard. In January, 1989, labor unions struck employer. Supervisory personnel, including Purcell, were assigned to fill in for striking workers. Purcell and two other supervisors, Horner and Dwight, worked together loading lumber on a forklift. On the afternoon of February 2, while Purcell was setting blocks, a load of lumber toppled from the forklift, crushing him.

The referee found that Purcell, Horner and Dwight had experience in the work that they were performing and were familiar with company safety procedures. She also found that Purcell had previously trained and supervised forklift drivers and block setters, had provided safety instruction and had made certain that safety procedures were followed. He knew that a block setter should never get between a moving vehicle and a load and that a forklift load is not to be set down until the driver can see the block setter. The referee found that those were company policies and also the general practices in the industry.

The referee found that, during the strike, the three men worked by "consensus" and that, on two occasions before the fatal accident, Purcell had moved toward the forklift before it had stopped. On one of those occasions, Horner had warned Purcell that that was unsafe.

OAR 437-40-030(1) provides:

"The employer shall see that workers are properly instructed and supervised in the safe operation of any machinery, tools, equipment, process, or practice which they are authorized to use or apply. This rule shall not be construed to require a supervisor on every part of an operation nor to prohibit workers from working alone."

The referee held:

"The decedent was not properly supervised because of the labor dispute. No one was in charge, among the three skilled and experienced workers. For most purposes, they did not

need a supervisor, because they all knew what to do and how to do it. However, a supervisor who is on the site frequently provides a different perspective, a sort of third-party view of the situation. In this case, a supervisor would most likely have noticed that Mr. Purcell was rushing the loads and trying too hard, and disciplined him effectively. His co-workers and fellow managers simply were not in a position to both supervise and keep working. The company did not designate anyone to be the supervisor of the team, with responsibility for safety, and the consensus approach was inadequate.

"* * * I conclude that this was at least the third such dangerous incident, and that there may well have been more which were not officially noted or reported. This is the sort of pattern which a supervisor would be expected to notice and stop. I believe that, absent the strike, this is what Roseburg Lumber's supervisors do."

■    Our review is only for errors of law. ORS 183.482(8)(a). Employer contends that the referee's order is inconsistent with the rule quoted above, because it essentially imposes a requirement that a supervisor be present at all times on every part of an operation. Although the rule does not require full-time supervision of every part of an operation, the first sentence recognizes that, in some instances, there will need to be a supervisor for a safe operation. The referee's order recognizes the distinction.

The referee found that, in general, the three men did not require supervision, but that the nature of loading and moving a forklift was such that it could not be done safely without supervision. Requiring a supervisor for that procedure would not require a supervisor for "every part" of employer's sawmill operation at Dillard. The referee's holding is not inconsistent with the rule.

■■    Employer next argues that the referee failed to make findings to support the conclusion that a "serious violation" occurred. To establish a serious violation, there must be a finding (1) that the violation presented a substantial probability of death or serious physical harm and (2) that the employer knew, or with reasonable diligence should have

known, of the violation. OAR 437-01-015(55)(a)(A).[1] The violation was failing to provide adequate supervision. The referee's findings support the conclusion that that violation was serious:

> "When someone is within the zone of danger of a forklift, particularly when there is ice and snow on the ground and on the loads, there is a substantial probability that death or serious physical harm will result if the load or the machine shifts. As provided in OAR 437-01-140(1), it is reasonably predictable, given the heavy loads carried on this forklift, that serious physical harm or death would result."

Employer argues that it could not be held to have knowledge of the violation, because there was no evidence that it knew, or should have known, that Purcell would walk between a stationary load and a moving vehicle. However, we agree with respondent that that argument misses the point. Employer's violation, as noted above, was the failure to supervise; it did not involve knowledge of what Purcell would or would not do. Although the referee did not make an explicit finding about employer's knowledge, the findings provide a rational basis to support the inference that employer knew of the failure. *See City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 272, 639 P2d 90 (1981). The referee found that employer did not assure that Purcell was supervised and did not designate a supervisor for the team. Implicit in those findings is that employer knew that there was no supervisor.

Affirmed.

---

[1] OAR 437-01-015(55)(a)(A) defines a serious violation as

"[a] violation in which there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use in a place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation[.]"