Argued and submitted September 24, 1996, affirmed June 18, 1997

# OREGON OCCUPATIONAL SAFETY & HEALTH DIVISION,
*Petitioner,*

*v.*

# DON WHITAKER LOGGING, INC.,
*Respondent.*

## (SH-91058; CA A90413)

941 P2d 1025

Erika L. Hadlock, Assistant Attorney General, argued the cause for petitioner. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Elliott C. Cummins argued the cause for respondent. With him on the brief was Cummins, Goodman, Fish & Peterson, P.C.

Before Riggs, Presiding Judge, and Leeson and Armstrong, Judges.

RIGGS, P. J.

466

**RIGGS, P. J.**

Petitioner, Oregon Occupational Safety and Health Division (OR-OSHA), seeks review of an order of an administrative law judge (ALJ) that dismissed a citation charging respondent, Don Whitaker Logging Company (employer), with serious violations of several safety standards under the Oregon Safe Employment Act.[1] We affirm.

OR-OSHA issued the citation for alleged serious violations after an accident involving employer's rigging crew at a logging site. A supervisor of the crew gave the signal to move a "turn"[2] of logs while he and two other employees were standing in their path, in an area known as the "bight."[3] One of the logs hit the supervisor and the other two employees, injuring them seriously.

Safety Compliance Officer Hoffman conducted an investigation after the accident. As a result of his investigation, Hoffman issued a citation to employer charging serious violations of several safety standards. At issue on review are five of those alleged serious violations. Items 1-2A, 1-2C, 1-3 and 1-4 stem from the accident itself and respectively allege serious violations of OAR 437-80-330(7),[4] OAR 437-80-330(10),[5] OAR 437-80-160(3)[6] and

---

[1] The Oregon Safe Employment Act is found at ORS 654.001 to 654.295, 654.750 to 654.780 and 654.991.

[2] A "turn" is "any log or group of logs or other material usually attached by chokers, grapples or other means of power and moved from a point of rest to the landing." *Former* OAR 437-80-005(79) (similar defintion now at OAR 437-06-005(78)).

[3] The crew was using a "high-lead" log retrieval system. In such a system, a "high-lead line" is strung in the shape of a triangle with two long sides and a shorter base. The line that forms one of the long sides of the triangle, the "main line," carries choked logs to the landing. The line that forms the other long end of the triangle, the "haul back line," runs back up the hill to be reloaded. The "bight" is the area within the triangle formed by the high-lead line.

[4] OAR 437-80-330(7) provides:

"Employees shall be in the clear of logs, root wads, chunks, rolling material and rigging before the go-ahead signal is given and shall stay in the clear until all rigging movement has stopped."

[5] OAR 437-80-330(10) provides:

"Standing on or near logs, root wads or other objects which may be moved by the log turn is prohibited."

[6] OAR 437-80-160(3) provides:

OAR 437-80-330(9).[7] Item 1-6 alleged that no monthly safety meeting had been conducted for two months before the accident, in violation of OAR 437-80-015(3).[8] OR-OSHA also classified that violation as serious.

Employer appealed the citations and requested a hearing before an ALJ. ORS 654.078. At the close of OR-OSHA's case, employer moved to dismiss items 1-2A, 1-2C, 1-3 and 1-4 on the ground that OR-OSHA had failed to show that employer had either actual or constructive knowledge of each alleged violation, which is necessary to find that a serious violation occurred.[9] *See Accident Prevention Div. v. Roseburg Forest Prod.*, 106 Or App 69, 72-73, 806 P2d 172 (1991); *Skirvin v. Accident Prevention Division*, 32 Or App 109, 112-15, 573 P2d 747, *rev den* 282 Or 385 (1978). The ALJ agreed and dismissed those items. The ALJ also dismissed item 1-6, pursuant to employer's motion, on the ground that two exhibits, each captioned "Monthly Safety Meeting Report," conclusively established that the safety meetings had occurred.

---

"Running lines shall be arranged so that employes will not be required to work in the bight. When this is not possible, employes shall move out of the bight of lines before the final signal to move the turn or they shall get in a position where they will be protected by standing timber of sufficient size that will ensure their safety."

[7] OAR 437-80-330(9) provides:

"Employees in the vicinity of a turn being broken out shall watch the turn, remain on their feet and shall not turn their backs to the turn until it is well into the clear."

[8] OAR 437-80-015 provides:

"Each employer shall develop, implement and maintain a formal accident prevention program. The accident prevention program shall include:

"* * * * *

"(3) A monthly safety meeting program for all employes. The meetings shall directly involve all employes each month and may be conducted individually, in separate crew meetings or in larger groups. Meeting minutes and attendance shall be documented and made available to employes upon request."

[9] OAR 437-01-015(53)(a)(A) defines a "serious violation" as

"[a] violation in which there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use in a place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*" (Emphasis supplied.)

■■ On review, with regard to the dismissal of items 1-2A, 1-2C, 1-3 and 1-4, OR-OSHA argues that the ALJ erred in failing to impute the supervisor's knowledge of the violation to employer. OR-OSHA cites for the first time on appeal OAR 437-01-760(3) and argues that that rule requires that a supervisor's knowledge of a violation be imputed to the employer in all circumstances. That rule provides:

> "(c)   Any supervisors or persons in charge of work are held to be the agents of the employer in the discharge of their authorized duties, and are at all times responsible for:
>
> "(A)   The execution in a safe manner of the work under their supervision; and
>
> "(B)   The safe conduct of their crew while under their supervision; and
>
> "(C)   The safety of all workers under their supervision."[10]

OR-OSHA argues that, because the rule provides that supervisors are the agents of the employer "at all times," a supervisor's knowledge of a violation, whether actual or constructive, must be imputed to the employer. However, OAR 437-01-760(3)(c), upon which OR-OSHA relies, also provides that supervisors are the agents of employers "in the discharge of their authorized duties." That being so, a supervisor is *not* the employer's agent when that supervisor commits a violation, contrary to the employer's policy. That is because, under those circumstances, committing the violation does not fall within the discharge of the supervisor's authorized duties. *See Restatement (Second) of Agency* § 280 (1957) (principal's knowledge is not affected by agent's knowledge of agent's own unauthorized act). We do not construe OAR 437-01-760(3)(c) to require that a supervisor's knowledge of his own violation be imputed to an employer in all circumstances.

■ That conclusion is supported by ORS 654.003, which declares a purpose of OSEA

---

[10] The same language was contained in *former* OAR 437-40-050(3). For ease of reference, throughout this opinion we refer to OAR 437-01-760, where that language is currently found.

> "to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon."

That policy statement is similar to 29 USC § 651(b), which declares purposes underlying the Federal Occupational Safety and Health Act, 29 USC § 651 *et seq* (OSHA), to include .                                          .

> "to assure *so far as possible* every working man and woman in the nation safe and healthful working conditions." (Emphasis supplied.)

Federal courts have interpreted 29 USC § 651(b), in the light of the emphasized text, to indicate that a supervisor's knowledge should not be imputed in all circumstances to the employer. Federal law interpreting OSHA is persuasive in interpreting the OSEA. *See, e.g., Skirvin*, 32 Or App at 115. Citing 29 USC § 651(b), the Fourth Circuit held that imputing a supervisor's knowledge to the employer in every instance would frustrate the goals of the Act because telling employers that they are liable for supervisors' violations regardless of their efforts to comply would tend only to discourage such efforts. *Ocean Elec. Corp. v. Secretary of Labor*, 594 F2d 396, 399 (4th Cir 1979). Given the similar text in ORS 654.003, the same rationale applies to the OSEA.

Our holding that the ALJ did not err in failing to impute the supervisor's knowledge of the violation to employer is limited to the circumstances of this case. We note that there may be circumstances when it is appropriate to impute a supervisor's knowledge of a violation to an employer. *See, e.g., Skirvin*, 32 Or App at 115 (discussing federal administrative decision in which supervisor's knowledge was properly imputed to employer when supervisor *observed*, but did not commit, the violation); *Mountain States Tel. & Tel. v. Occupational Safety*, 623 F2d 155, 158 (10th Cir 1980) (reasonable to charge employer with supervisor's actual or constructive knowledge of noncomplying conduct of *subordinate*). We hold only that, when a supervisor commits a violation, OAR 437-01-760(3)(c) does not *require* that the supervisor's knowledge of that violation be imputed to the employer. The ALJ in this case did not err in failing to impute the supervisor's knowledge of the violations alleged in items 1-2A, 1-2C, 1-3 and 1-4 to employer.

■     With regard to items 1-2A, 1-2C, 1-3 and 1-4, OR-OSHA also argues that the ALJ, in essence, concluded that the violations were the acts of a "rogue supervisor" and applied an incorrect legal standard in so doing.[11] The ALJ did not explicitly conclude that the violations were the acts of a rogue supervisor, but, assuming without deciding that that is the case, OR-OSHA's argument fails. OR-OSHA maintains that a finding that an act was committed by a rogue supervisor must be supported by evidence of three elements: (1) that the supervisor's act was contrary to a consistently enforced company policy; (2) that the employer's supervisors were adequately trained in safety matters; and (3) that employer took reasonable steps to discover safety violations committed by its supervisors. OR-OSHA argues that the ALJ erroneously considered only one of those elements—that the supervisor was well trained and safe. Employer responds that under federal law, the three-prong test advocated by OR-OSHA, which was first enunciated in *Western Waterproofing Co., Inc. v. Marshall*, 576 F2d 139, 144 (8th Cir), *cert den* 439 US 965 (1978), generally is no longer applied, and that most circuits currently apply a more flexible approach that considers various factors relevant to the foreseeability of the violation on the part of the employer.

    Employer's characterization is more descriptive of federal law with regard to the rogue supervisor defense. For example, in *Pennsylvania P. & L. v. Occupational S. & H.R. Com'n*, 737 F2d 350 (3d Cir 1984), the Third Circuit reversed the decision of an ALJ that had applied the three-prong *Western Waterproofing* test, stating:

"The measure of reasonableness applied to an employer's efforts to foresee and prevent violations is not so rigid as the

---

[11] The so-called "rogue supervisor defense" consists of evidence offered to show that the employer generally exercised diligence to discover and prevent violations by its supervisors and that a specific violation of a supervisor was not foreseeable or preventable on the part of the employer. That showing supports the inference that the employer did not have reason to know of the violation, *i.e.*, that it should not be deemed to have constructive knowledge of the violation. Since an employer must be shown to have either actual or constructive knowledge of a violation to be liable for a serious violation, *Roseburg Forest Prod.*, 106 Or App at 72-73; *Skirvin*, 32 Or App at 112-15, rogue supervisor evidence aims to negate the element of employer knowledge. *See OR-OSHA v. Tom O'Brien Construction Co., Inc.*, 148 Or App 453, 941 P2d 550 (1997).

three-part [*Western Waterproofing*] test announced by the ALJ. * * *

"The courts of appeals have consistently held that the adequacy of a company's safety program, broadly construed, is the key to determining whether an OSHA violation was reasonably foreseeable and preventable." *Pennsylvania Power*, 737 F2d at 358.[12]

As stated above, federal law interpreting OSHA is persuasive in interpreting the OSEA. The ALJ's analysis finds support in federal law and is certainly not contrary to it. OR-OSHA's argument, based on federal case law, does not persuade us that the standard applied by the ALJ was erroneous. Thus, neither argument raised by OR-OSHA under the first assignment of error merits reversal. We affirm the dismissal of items 1-2A, 1-2C, 1-3 and 1-4.

■■ In its second assignment of error, OR-OSHA argues that the ALJ erred in concluding that two exhibits established as a matter of law that two safety meetings occurred in the months prior to the accident. Employer responds that the error is not preserved. We have reviewed the record and agree with employer's assertion. OR-OSHA does not argue that we should address the error as one of law, apparent on the face of the record. *See* ORAP 5.45(2). We will not address an issue on review that was not raised in the administrative hearing. *Cramer v. PSRB*, 122 Or App 290, 291, 857 P2d 232 (1993). Therefore, we affirm the dismissal of item 1-6.

Affirmed.

---

[12] *See also Capital Elec. Line Builders of Kansas v. Marshall*, 678 F2d 128, 130 (10th Cir 1982) (evidence regarding adequacy of safety program, training *or* supervision required to determine if supervisor's violation was foreseeable); *Ocean Electric*, 594 F2d at 403 (evidence regarding adequacy of employer's safety program and supervisor's training, experience and safety record indicated that violation by supervisor was unforeseeable).