Argued and submitted January 11, 2012, reversed and remanded on petition and cross-petition January 9, petition for review allowed June 20, 2013 (353 Or 747)

## OREGON OCCUPATIONAL SAFETY & HEALTH DIVISION,
*Respondent*
*Cross-Petitioner,*

*v.*

## CBI SERVICES, INC.,
*Petitioner,*
*Cross-Respondent.*

Workers' Compensation Board
0900126SH; A147558

295 P3d 660

Carl B. Carruth, South Carolina, argued the cause for petitioner-cross-respondent. With him on the briefs were McNair Law Firm, P.A., and Joel S. DeVore and Luvaas Cobb.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent-cross-petitioner. With her on the briefs were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

In connection with the construction of a water tower at the Creswell water treatment plant, the Oregon Occupational Safety and Health Division (OR-OSHA) issued a citation to CBI Services, Inc. (employer) pursuant to the Oregon Safe Employment Act (OSEA).[1] The citation alleged that employer had committed two "serious" safety violations involving deficient fall-protection measures.[2] In item one of the citation, employer was charged with a serious violation of OAR 437-003-0073[3] because a worker had not attached the lanyard on his safety harness to the "boom supported elevating work platform[ ]" (lift) on which he was working. In item two, employer was charged with a serious violation of OAR 437-003-1501[4] because a worker welding near the top of the then-incomplete water tank had stepped up and out of the safety-compliant scaffolding surrounding him without wearing a safety harness and lanyard, thereby putting himself at risk of falling 32 feet from the top of the tank's outer wall to the ground. Following a hearing, an administrative law judge (ALJ) vacated item one and affirmed item two.

Employer seeks judicial review of the ALJ's order affirming item two, arguing that the ALJ erred as a matter of law by erroneously interpreting and applying

---

[1] The OSEA is codified at ORS 654.001 to 654.295, ORS 654.412 to 654.423, ORS 654.750 to 654.780, and ORS 654.991.

[2] ORS 654.086(2) defines a serious violation as one in which there is a

"substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

*See also* OAR 437-001-0015 (similar definition of a "[s]erious violation").

[3] OAR 437-003-0073 provides, in relevant part:

"(1) When using boom supported elevating work platforms * * *.

"(2) Workers must use personal fall protection that complies with Subdivision M of this division, when working in these devices."

[4] OAR 437-003-1501 provides, in relevant part, that,

"when employees are exposed to a hazard of falling 10 feet or more to a lower level, the employer shall ensure that fall protection systems are provided, installed, and implemented according to the criteria in [29 CFR section] 1926.502."

the knowledge element of OR-OSHA's *prima facie* case in finding that employer had constructive knowledge of the violation. OR-OSHA cross-petitions, arguing that the ALJ erred as a matter of law in vacating item one of the citation by misinterpreting OAR 437-003-0073 as incorporating a height requirement for fall protection on lifts. We review the ALJ's order[5] for legal error, ORS 183.482(8), and, for the reasons set forth below, reverse and remand for reconsideration on employer's petition regarding item two and reverse and remand for reconsideration on OR-OSHA's cross-petition regarding item one.

The relevant facts are largely undisputed. On February 2, 2009, OR-OSHA Safety Compliance Officer Brink noticed someone working on the top of a large water tower at the Creswell water treatment plant, drove closer, and stopped to investigate. Upon arrival, Brink saw that the worker, Crawford, was not utilizing fall-protection equipment despite the fact that he was welding approximately 32 feet above the ground and appeared to be "sitting on the top edge working." Although safety-compliant scaffolding had been erected to protect workers from falls toward the *inside* of the water tank, Brink observed and photographed Crawford with his "feet up on the painter's railing while * * * hunched over welding on the top of the tank" such that he was exposed to a risk of falling toward the outside of the tank.[6] Brink took several pictures and then approached the work crew's supervisor, Vorhof, who was occupied rigging anchor cables at ground level inside the entrance to the tank. Brink walked up to Vorhof inside the large, open entrance to the tank such that Crawford was approximately 65 feet away and visible from where they stood. After Brink alerted

---

[5] Pursuant to ORS 654.290(2)(b), the ALJ's order is deemed to be a final order of the Workers' Compensation Board for purposes of judicial review.

[6] Because the top of the tank had not yet been completed, Crawford was working on the tank's "shell"—a large wall with a relatively narrow top edge, scaffolding with guardrails erected on the inside, and a sheer face on the outside. Prior to the violation, Crawford had been standing on "the platform of the scaffold" such that he was protected on the outside by the tank's shell (which was at chest height) and on the inside by the scaffolding's guardrails. The "painter's railing" was a steel beam welded onto the inside of the wall 26 inches from the top. Such rails are commonly used so that, upon completion of the construction, painters can attach "buggies" to them and thereby safely move around the inside of the tank while painting.

Vorhof to Crawford's potential violation, Vorhof "yelled at [Crawford] to get down on the staging." Vorhof later testified that he had not seen Crawford climb onto the painter's rail and that, from his vantage point, he could not tell whether or not Crawford was up on the edge of the tank.[7] Crawford was not wearing a safety harness and lanyard because he was initially working within a fully enclosed area protected by safety-compliant scaffolding. He stated that he only stepped up onto the painter's rail because, while welding, he "kept on getting hot sparks down [his] shirt" and therefore "needed to elevate [himself]." There is no evidence in the record, beyond the fact that Brink had time to "observe[] Crawford at the top of the tank while driving down the road and continued to observe him while approaching the work site[,]" establishing the duration of Crawford's violation.

While speaking with Vorhof, Brink saw a second worker, Bryan, situated in a mechanical lift while wearing a safety harness with a lanyard that was not secured to the lift. Although Bryan was working only five to six feet above the ground, he later testified that it was standard practice to attach the lanyard in such a situation but that he had been repositioning himself prior to Brink's arrival and had simply forgotten to reattach the lanyard. Brink's field notes, referenced by the ALJ's order, indicate that Bryan was in the lift without fall protection for approximately 10 minutes. As noted, prior to Brink's arrival, Vorhof was occupied rigging anchor cables just inside the ground-level entrance to the tank and, as with Crawford, was within approximately 65 feet of Bryan. When he walked into the tank to approach Vorhof, Brink pointed to Bryan and stated, "Hey, that man is not tied off." Vorhof then asked Bryan whether he was tied off, at which point Bryan noticed his omission and quickly attached the lanyard.

---

[7] Crawford later testified that "he was not sitting on the top [edge] of the tank but rather was leaning against it" such that "the top of the tank was never above waist height[,]" eliminating any potential danger. In other words, he testified that he was essentially sitting on the painter's rail with his back to the tank's shell so that he was protected on all sides by either the shell or the scaffolding's guardrails. However, the ALJ found that Brink's photographs refuted that statement and noted that there was no evidence that a protective railing or scaffold had been erected on the outside of the tank in order to protect workers from the potential 32-foot fall from the outside of the tank to the ground.

At the time of the alleged violations, employer had extensive safety rules, precautions, and training mechanisms in place—including fall-protection training, mandatory worksite safety meetings, and worksite-specific safety and fall-protection plans. Employer's specific fall-protection rules required the use of either protective scaffolding or a lanyard attached to a full-body harness whenever a worker was exposed to a fall hazard of six feet or more. Employer's area safety manager, Hynek, testified that copies of the fall-protection rules were "available on the jobsite for the employees" and noted that supervisors conducted morning meetings regarding safety and then monitored employees more informally throughout the day. He explained that supervisors like Vorhof were required to complete weekly safety checklists and that worksites were visited by upper management on a regular basis to ensure compliance. Vorhof additionally testified, having spent 35 years working in construction, that the crew at the Creswell worksite—including Crawford and Bryan, each of whom Vorhof had known "for at least ten years"—was particularly safety-conscious and had an excellent safety record.

Ultimately, on February 18, 2009, Brink issued employer a citation and notification of penalty for serious violations of OAR 437-003-0073(2) (item one, directed at Bryan's failure to reattach his lanyard while working on the lift) and OAR 437-003-1501 (item two, directed at Crawford's lack of fall-protection equipment upon stepping up onto the painter's rail). Crawford, Bryan, and Vorhof—each of whom was a long-term employee with an excellent safety record—were disciplined by employer as a result of the citation.

Employer requested a hearing, which was held before the ALJ on June 10, 2010. At the beginning of the hearing, and again after the conclusion of OR-OSHA's case-in-chief, employer moved to dismiss the citation in its entirety on the ground that OR-OSHA had not carried its burden of proving employer's knowledge of the alleged violations. The ALJ denied the motions, stating:

> "Employer argues that continuous observation of employees is neither required [n]or possible and that the

conditions existed in such a short window of time such that Vorhof did use reasonable diligence in supervising his crew. However, *** I find that there was sufficient time for Vorhof to observe either or both of the workers subject to the citations and that constructive knowledge was established by OR-OSHA."

Following the hearing, the ALJ issued an opinion and order vacating item one of the citation and affirming item two. With respect to item two, the subject of employer's petition, the ALJ concluded that Vorhof had constructive knowledge of Crawford's violation imputable to employer. With respect to item one, the subject of OR-OSHA's cross-petition, the ALJ construed OAR 437-003-0073(2) as incorporating a predicate height requirement of at least six feet and vacated item one on the basis of his finding that OR-OSHA failed to prove that Bryan was exposed to a fall hazard of six feet or more.

On judicial review, employer reprises its contention that OR-OSHA failed to prove employer knowledge, arguing that the ALJ erred as a matter of law by incorrectly applying the standard for constructive knowledge in affirming item two. Specifically, employer argues that the ALJ improperly found that Vorhof had constructive knowledge imputable to employer solely on the basis of Vorhof's presence at the time of the violation and a generalized finding that "the violative condition existed for a 'sufficient time for Vorhof to observe'" it.[8] Relying on the language in ORS 654.086(2) providing that a serious violation may be assessed "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation[,]" employer contends that "reasonable diligence does not require continuous supervision by the employer" and that the ALJ's finding implicitly required continuous supervision by Vorhof such that employer was subjected to a strict-liability approach to constructive knowledge contrary to both the purpose of the OSEA and established

---

[8] As noted (and as employer points out and OR-OSHA acknowledges), the ALJ did not make a specific finding as to the duration of Crawford's violation. Rather, he referenced Brink's field notes estimating that Bryan's violation lasted approximately 10 minutes and noted that Brink was able to view Crawford's violation throughout the course of his approach to the worksite.

law construing the standard for "reasonable diligence."[9] OR-OSHA responds that the reasonable diligence inquiry focuses on whether "the supervisor *could have* discovered the violation through reasonable diligence, not whether a reasonable supervisor would have done so." (Emphasis in original.) That is, OR-OSHA contends that, because "it was possible for Vorhof to have known about the conduct that constituted the violation[,]" the ALJ did not err in finding that Vorhof failed to exercise reasonable diligence and therefore had constructive knowledge of the violation imputable to employer. We agree with employer as to item two, and address OR-OSHA's cross-petition regarding item one separately below.

We first address the issue of whether the ALJ properly determined that OR-OSHA carried its burden of proving employer's knowledge of Crawford's violation by imputing Vorhof's purported constructive knowledge to employer. In so doing, we evaluate the ALJ's treatment of the reasonable diligence inquiry set forth in ORS 654.086(2). That statute provides that

> "a serious violation exists in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use, in such place of employment *unless the employer did not, and could*

---

[9] Employer alternatively argues that the ALJ erred as a matter of law in addressing its affirmative defense of unpreventable employee misconduct, conflating "reasonable diligence" with an element of that affirmative defense requiring a showing that the employer "has taken steps to discover violations." We agree, and OR-OSHA likewise concedes, that "it was error to use the same evidence to prove the constructive knowledge element of OR-OSHA's *prima facie* case and to disprove [that] element of [employer's] unpreventable employee misconduct defense." However, OR-OSHA argues that "that error does not require reversal of the decision on review." *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (setting forth criteria for entertaining alternative bases for affirmance). Because we conclude that the ALJ incorrectly imputed constructive knowledge of Crawford's violation to employer, we need not further discuss employer's second assignment of error. We address it here only to confirm that the unpreventable employee misconduct defense requires findings *independent* of those made in assessing the knowledge element of OR-OSHA's *prima facie* case. *See generally Oregon Occupational Safety & Health v. CC & L Roofing*, 248 Or App 50, 54-55, 273 P3d 178 (2012) ("[E]mployer knowledge is a *prima facie* element of a serious violation, and OR-OSHA retains the burden of persuasion on that issue." (Citation and internal quotation marks omitted.)).

*not with the exercise of reasonable diligence, know of the presence of the violation."*

(Emphasis added.) OR-OSHA must prove employer knowledge by a preponderance of evidence in order to make out a *prima facie* case of a serious violation, OAR 438-085-0820(3); *see Accident Prevention Div. v. Roseburg Forest Prod.*, 106 Or App 69, 72-73, 806 P2d 172 (1991), and, under most circumstances, the knowledge of a supervisory employee to whom responsibility for safe employment has been delegated may be imputed to his or her employer. *See OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 263-64, 985 P2d 1272 (1999); OAR 437-001-0760(1)(e)(A) - (C) (providing that all "agents of the employer" are responsible for the safety and safe conduct of "all workers under their supervision"). In combination, those principles dictate that, where a supervisor could not know of a safety violation with the exercise of reasonable diligence, that supervisor cannot have constructive knowledge of the violation imputable to his or her employer. *See generally Oregon Occupational Safety & Health v. CC & L Roofing*, 248 Or App 50, 273 P3d 178 (2012) (citing *Don Whitaker Logging, Inc.*, 329 Or at 263); ORS 654.086(2); OAR 437-001-0015. Accordingly, employer's petition turns on whether Vorhof could have known of Crawford's safety violation with the exercise of reasonable diligence at the worksite.

As a preliminary matter, the Supreme Court has intimated that, in deciding cases under the OSEA, we may look to federal case law for guidance *only* where the rule at issue has a "counterpart in the federal Occupational Safety and Health Act (OSHA)." *Don Whitaker Logging, Inc.*, 329 Or at 263; *see also, e.g., OR-OSHA v. Tom O'Brien Construction Co., Inc.*, 148 Or App 453, 456, 461, 941 P2d 550 (1997), *aff'd*, 329 Or 348, 986 P2d 1171 (1999) (citing federal case law). Here, ORS 654.086(2) mirrors its federal counterpart, 29 USC section 666(k), which provides that

"a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment *unless the employer did*

*not, and could not with the exercise of reasonable diligence, know of the presence of the violation."*

(Emphasis added.) Accordingly, because the operative language under the federal OSHA is identical to that under the OSEA, we may look to federal case law, and do so given the dearth of Oregon cases addressing the issue of reasonable diligence.

In affirming item two of the citation, the ALJ grounded his ultimate finding of imputable constructive knowledge solely in findings that "there was sufficient time for Vorhof to observe either or both of the workers subject to the citations" and that Vorhof was "within 65 feet of the violative conditions." The order includes no further discussion of the standard governing constructive knowledge and reasonable diligence. Rather, in relying only on time and proximity, it ultimately implies that, because Vorhof was present at the worksite while the violation occurred, and because he was close enough to potentially witness it, he had constructive knowledge of the violation. The ALJ thus imputed constructive knowledge to employer based solely on a finding that Vorhof could have seen the violation had he ceased performing his other duties—in this instance rigging anchor cables—to look up when, or relatively soon after, Crawford stepped up from the area protected by scaffolding (where fall-protection equipment was not required) to the unprotected area near the top of the tank's shell.

We have previously rejected a narrow approach to the knowledge requirement predicated on a supervisor's mere proximity to the violation. In *Skirvin v. Accident Prevention Division*, 32 Or App 109, 111-13, 573 P2d 747, *rev den*, 282 Or 385 (1978), the employer was charged with violation of the OSEA based on an employee's failure to wear a hardhat. On judicial review, we noted that the referee "said, 'While I find [that] the employer's proximity to the employee who committed the act is not proof of actual knowledge, I find [that] it constitutes *prima facie* evidence of constructive knowledge * * *.'" *Id*. at 112. Addressing that conclusion, we stated:

> "With all due respect, that reasoning process makes very little sense. It is the equivalent of saying, 'The employer

must have knowledge of the incident and is chargeable with having knowledge if he (that is, an agent or responsible employee) is near enough to have observed the incident even if it in fact was not observable.'"

*Id.* at 112-13. We reach a similar conclusion in this case. A finding that Vorhof was near enough to observe Crawford as he stepped up onto the painter's rail and worked near the outer edge of the tank without fall protection does not alone permit a determination that Vorhof had constructive knowledge of that violation. The Supreme Court has explicitly stated that the OSEA "is a fault-based system." *Don Whitaker Logging, Inc.*, 329 Or at 263. As employer points out, a finding that Vorhof had constructive knowledge of Crawford's violation simply because it occurred within a period of time and in a place that might theoretically have allowed him to see it amounts to imposition of a strict-liability approach to the knowledge requirement whenever an employer affirmatively chooses to place a supervisor at a worksite[10]—a safety precaution which, incidentally, is not necessarily required. *See* OAR 437-001-0760(1)(a) (rule providing that employers must take safety precautions "*does not require a supervisor on every part of an operation* nor prohibit workers from working alone" (emphasis added)); *Roseburg Forest Prod.*, 106 Or App at 72 (so stating).

The federal courts have likewise rejected a narrow approach to the knowledge requirement and accompanying

---

[10] As employer points out, we rejected the policy implications of that *de facto* strict-liability approach in *Skirvin*:

"'[W]e fail to see wherein charging an employer [with a violation] because of an individual, single act of an employee, of which the employer had no knowledge and which was contrary to the employer's instructions, contributes to achievement of the [objectives] sought by the Congress [in enacting the federal OSHA].'"

32 Or App at 114 (quoting *Brennan v. Occupational Safety & Health Rev. Com'n*, 511 F2d 1139, 1145 (9th Cir 1975)) (first brackets in *Skirvin*). Moreover, in addressing the reasonable diligence inquiry, the federal courts have repeatedly clarified that "Congress quite clearly did not intend * * * to impose strict liability[,]" reaffirming that, "[i]n keeping with this purpose of eschewing a strict liability standard, * * * the Act imposes liability on the employer *only* if the employer knew, or 'with the exercise of reasonable diligence, [should have known] of the presence of the violation.'" *W.G. Yates & Sons v. Occupational Safety & Health*, 459 F3d 604, 606-07 (5th Cir 2006) (citations and some internal quotation marks omitted; emphasis, brackets, and omissions in original); *accord Titanium Metals Corp. of America v. Usery*, 579 F2d 536, 543-44 (9th Cir 1978).

reasonable diligence inquiry. Further, the body of federal case law that has developed in connection with the federal Occupational Safety and Health Act (OSHA) sets forth numerous pertinent factors—often emphasizing the foreseeability of violations as well as the measures taken to prevent them—to which we look for guidance in determining the proper standard for assessing a supervisor's exercise of reasonable diligence. The Second Circuit recently noted that "'reasonable diligence' for the purposes of constructive knowledge involves, *among other factors*, an employer's 'obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence.'" *Public Utilities Maintenance, Inc. v. Secretary of Labor*, 417 Fed Appx 58, 63 (2d Cir 2011) (citations omitted; emphasis added). Addressing supervisory duties, the court further stated that, "'[d]epending upon the circumstances*, close supervision may or may not be reasonably necessary.'" *Id.* (quoting *New York State Elec. & Gas v. Secretary of Labor*, 88 F3d 98, 109 (2d Cir 1996)) (brackets in *Public Utilities Maintenance, Inc.*; emphasis added). In *Public Utilities Maintenance, Inc.*, the employer challenged a citation for safety violations committed in connection with painting towers in close proximity to exposed electric currents. In upholding the ALJ's affirmance of the citation, the Second Circuit noted that the employer's safety plan specifically called for "an observer for each tower on which a crew was working." *Id.* However, at the time of the violation, there was only one observer present for crews working on two towers, and that "designated observer" was "tidying up his truck instead of observing either [work crew]." *Id.* at 63-64.

Similarly, in *Kokosing Constr. Co. v. Occupational Safety & Hazard Review Com'n*, 232 Fed Appx 510 (6th Cir 2007), the Sixth Circuit upheld a finding of constructive knowledge on the part of a supervisory employee after acknowledging, using language mirroring that relied upon by the Second Circuit in *Public Utilities Maintenance, Inc.*, that "'[r]easonable diligence involves *several factors*, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence.'" *Id.* at

512 (citations and some internal quotation marks omitted; emphasis added). There, when using "wire chokers" to pull heavy equipment at a construction site, the supervisor and another employee were exposed to electric shock while lifting a wire choker from a pile of extension cords and water-discharge hoses. *Id.* at 511. In affirming the agency's finding that the supervisor had constructive knowledge of the violation, the court stated:

> "[The supervisor] knew there was a possibility that an old and worn choker like this one had abrasions that could pierce an electrical cord, and that such an occurrence would present a hazard. By failing to check for such abrasions or even instruct [the employee] to wear gloves before handling the choker, [the supervisor] failed to take incredibly simple actions to prevent the hazard.
>
> "Additionally * * * the damage [to the choker] should have been obvious to anyone who examined [it]. Thus, there is substantial evidence on the record to show that reasonable diligence would have revealed the hazard and, accordingly, [the supervisor] had constructive knowledge of it, which can be imputed to [the employer]."

*Id.* at 512; *see also New York State Elec. & Gas*, 88 F3d at 109 ("*Depending upon the circumstances*, close supervision may or may not be reasonably necessary to attain compliance with safety rules. *Insisting that each employee be under continual supervisor surveillance is a patently unworkable burden on employers*." (Citation omitted; emphases added.)); *Pennsylvania P. & L. v. Occupational S. & H.R. Com'n*, 737 F2d 350, 354 (3d Cir 1984) ("The [OSHA] does not impose strict liability on employers for isolated and idiosyncratic instances of employee misconduct. We have held that the purposes of the Act are best served by limiting citations for serious violations to conduct that could have been *foreseen* and prevented by employers with the exercise of reasonable diligence and care." (Citation omitted; emphasis added.)).

Moreover, contrary to OR-OSHA's argument that "[t]he issue * * * is whether the supervisor *could have* discovered the violation through reasonable diligence," most federal courts have determined—applying the same statutory language defining a serious violation set forth

in ORS 654.086(2)—that the relevant inquiry in proving a serious violation is whether "an employer knew or *should have* known of a hazardous condition." *American Wrecking Corp. v. Secretary of Labor*, 351 F3d 1254, 1264 (DC Cir 2003) (citation omitted; emphasis added); *see St. Joe Minerals v. Occupational Safety & Health*, 647 F2d 840, 847 (8th Cir 1981) (an employer is liable for a serious violation "only if [it] knew or *reasonably should have known* of the hazardous condition" (emphasis added)); *Bunge Corp. v. Secretary of Labor*, 638 F2d 831, 834 (5th Cir 1981) (similar). We too have framed the inquiry using that language, albeit in the context of an employer's failure to provide worksite supervision in the first place. *See Roseburg Forest Prod.*, 106 Or App at 72-73 ("To establish a serious violation, there must be a finding * * * that the employer knew, or with reasonable diligence *should have* known, of the violation." (Citation omitted; emphasis added.)). The reasonable diligence inquiry has even been expressly likened to assessment of negligence. *See U.S. v. Ladish Malting Co.*, 135 F3d 484, 490 (7th Cir 1998) (explaining that section 666(k) of the OSHA "defines a 'serious' violation * * * and allows the employer to defend by showing that it 'did not, and could not with the exercise of reasonable diligence, know of the presence of the violation'— *which is to say, that it was not negligent*" (emphasis added)); *Bunge Corp.*, 638 F2d at 834 (characterizing the reasonable diligence inquiry as a "negligence-type limitation").

Thus, to the extent that federal case law dictates that foreseeability be considered in evaluating whether a supervisor exercised reasonable diligence, the ALJ's inquiry in this case was critically shortsighted. Vorhof had no reason to believe that Crawford would decide to step up out of the protective scaffolding and onto the painter's rail. Rather, Crawford's violative action—unlike the violations described above—was entirely unforeseeable, yet the ALJ did not take that factor (or myriad others considered by federal courts as illustrated above) into account in determining that Vorhof failed to exercise reasonable diligence to detect and prevent it.

Further, this court has previously quoted with approval—albeit in addressing employer knowledge of

safety violations committed by supervisors—federal case law focusing on the adequacy and efficacy of employers' safety programs in evaluating "'whether an OSHA violation was reasonably foreseeable and preventable.'" *OR-OSHA v. Don Whitaker Logging, Inc.*, 148 Or App 464, 470-71, 941 P2d 1025 (1997), *rev'd*, 329 Or 256, 985 P2d 1272 (1999) (quoting *Pennsylvania P. & L.*, 737 F2d at 358); *see CC & L Roofing*, 248 Or App at 53 (highlighting, in affirming a finding that the employer lacked constructive knowledge, that the ALJ "found that [the employer] had done everything that it could to supply, train, and prepare its employees to work in compliance with OR-OSHA's rules and had exercised reasonable diligence to ensure that its workers adhered to company policy and OR-OSHA rules regarding fall protection"); *see also Brennan v. Butler Lime & Cement Company*, 520 F2d 1011, 1018 (7th Cir 1975) (stating that "whether a serious violation of the standard was foreseeable with the exercise of reasonable diligence depends in great part on whether [the employees] *** had received adequate safety instructions"); *Capital Elec. Line Builders of Kansas v. Marshall*, 678 F2d 128, 131 (10th Cir 1982) ("When an employee is working 50-60 feet in the air, there is little an employer can do *** beyond providing adequate training and equipment, and explaining how to perform the job and what general hazards to avoid."). Here, the ALJ failed to take into account employer's extensive safety protocols, including worksite-specific fall-protection planning, in determining that Vorhof had constructive knowledge of Crawford's violation.[11]

Finally, as alluded to above, the ALJ did not address the evidence indicating that Vorhof had no reason to believe that Crawford was exposed to a potential fall hazard at all given the protective scaffolding which, had Crawford not decided of his own accord to step up onto the painter's rail, negated the need for a safety harness and lanyard. That

---

[11] Our reliance on federal case law in *Don Whitaker Logging, Inc.* was repudiated by the Supreme Court because the standard at issue there had no counterpart in the federal OSHA; however, the Supreme Court's subsequent decision relied in part on principles relevant here—most importantly that the OSEA is not designed to impose strict liability on employers for the acts of their employees via findings of constructive knowledge. *Don Whitaker Logging, Inc.*, 329 Or at 262-64.

deficiency, in addition to the ALJ's aforementioned failure to account for Vorhof's other duties—*i.e.*, rigging anchor cables at the time of the violation—supports our conclusion that the ALJ improperly failed to consider anything beyond Vorhof's proximity to and opportunity to witness Crawford's violation in finding that he had imputable constructive knowledge of it. As set forth above, such a conclusion—based principally on the simple fact that employer placed a supervisory employee on site—neither addresses nor comports with the principle that OR-OSHA cannot establish the *prima facie* element of employer knowledge where the employer or its agent "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." ORS 654.086(2); *see also* OAR 437-001-0015; 29 USC § 666(k).

Rather, in addition to time and proximity, when assessing a supervisor's exercise of reasonable diligence or lack thereof the agency should consider, *inter alia*, the foreseeability of a safety violation or hazardous condition, the general circumstances and level of danger inherent in the work, the potential need for continuous supervision, the nature and extent of the supervisor's other duties, the supervised workers' training and experience, and the extent and efficacy of the employer's safety programs and precautions. *See generally Skirvin*, 32 Or App at 112 ("[T]he employer's responsibility is for *those occurrences [it] can reasonably be expected to foresee or control* and *not as a guarantor of employee conduct*." (Internal quotation marks omitted; emphases added.)). Accordingly, because the ALJ's finding of constructive knowledge was predicated only on consideration of time and proximity, we reverse the ALJ's affirmance of item two and remand for reconsideration in light of the additional factors that merit consideration in determining whether Vorhof exercised reasonable diligence at the Creswell worksite. To be clear, the violative condition's duration is not immaterial; rather, the fact that one of several workers violated a safety rule during a given period of time does not necessarily give rise to a determination that any on-site supervisor failed to exercise reasonable diligence simply because he or she did not discover the violation within that period. As employer correctly points

out, "a substantial number of cases *** address [the] duration of a violative condition as *one potential factor among many* in determining whether an employer exercised reasonable diligence." (Emphasis added.) As set forth above, we embrace that multifactored analysis.

We next address OR-OSHA's cross-petition. As noted, OR-OSHA asserts that the ALJ erred in vacating item one of the citation by improperly incorporating a height requirement for mandatory fall-protection equipment into OAR 437-003-0073. That rule provides:

"(1) When using boom supported elevating work platforms ***.

"(2) Workers must use personal fall protection that complies with Subdivision M of this division, when working in these devices."

Specifically, OR-OSHA contends that—in reading a height requirement into the above-quoted rule—the ALJ erroneously relied on that rule's cross-reference to Subdivision M of Division 3 of the Oregon Occupational Safety and Heath Standards (Subdivision M). Because Subdivision M includes OAR 437-003-1501, which sets forth general height requirements for the mandatory use of fall-protection equipment, the ALJ concluded that OAR 437-003-0073 likewise includes a height requirement.

As applied to these facts, OR-OSHA challenges the ALJ's conclusion that, although Bryan was in fact on a "boom supported elevat[ing] work platform[]" at the time of the alleged violation and was therefore subject to the requirements of OAR 437-003-0073, he was only five to six feet[12] above the ground such that no violation could have

---

[12] OAR 437-003-1501, while generally imposing a 10-foot height requirement on fall-protection violations, contains exceptions reducing the height requirement to six feet in certain circumstances. Assuming that one of those exceptions applied to these facts, the ALJ nevertheless found that OR-OSHA

"failed in its burden of proof to show that Bryan was exposed to a hazard of 6 feet or more as there was no specific evidence provided to indicate how high the lift was at the time of the alleged violation. The lift may have been at 6 feet or it may have been at 5 feet, on this record there is no way to know."

Because OR-OSHA does not challenge that finding on judicial review, we determine only whether the rule incorporates the collective height requirements set forth in OAR 437-003-1501 without regard to any specific height requirement applicable to these facts.

occurred given the height requirement ostensibly imposed by the rule's cross-reference to Subdivision M. Employer responds, first, that the ALJ properly incorporated the aforementioned height requirement into OAR 437-003-0073 and then correctly vacated item one based on the undisputed fact that Bryan was only five to six feet above the ground when his lanyard was not tethered to the lift. Alternatively, employer asserts that (1) OR-OSHA did not carry its burden to prove that employer had knowledge of the alleged violation, (2) the affirmative defense of unpreventable employee misconduct relieves employer of liability, and (3) even if Bryan's failure to reattach his lanyard constituted a violation, it was at most a "minimal" violation.[13] We agree with OR-OSHA that OAR 437-003-0073 does not incorporate a height requirement and address employer's alternative arguments below.

OR-OSHA's cross-petition requires that we interpret OAR 437-003-0073. In construing an administrative rule, we employ the same methodology used to determine the meaning of a statute. *Protect Grand Island Farms v. Yamhill County*, 249 Or App 223, 230, 275 P3d 201, *rev den*, 352 Or 170 (2012) (citing *Tye v. McFetridge*, 342 Or 61, 69, 149 P3d 1111 (2006)). We examine the text of the rule in context in order to discern and give effect to the intent of the enacting body—here, the Director of the Department of Business and Consumer Services (the director).[14] *Id.* at 230-31; *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting forth interpretive

---

[13] A minimal violation is a violation that "does not have a direct or immediate relationship to the safety or health of employees." OAR 437-001-0015; *see* ORS 654.071(5) (authorizing notices "in lieu of citation[s]" for minimal violations that bear "no direct or immediate relationship to occupational safety or health"). Here, employer argues that Bryan would have impacted the ground in the event of a fall whether or not his lanyard had been secured to the lift.

[14] We afford OR-OSHA's interpretation of OAR 437-003-0073 no deference, as the deferential standard set forth in, among other cases, *Coffey v. Board of Geologist Examiners*, 348 Or 494, 509, 235 P3d 678 (2010), applies "only when the body interpreting the rule also is the body that promulgated it." *Don Whitaker Logging, Inc.*, 329 Or at 262 n 7. The rule at issue here was promulgated by the director, not by OR-OSHA, and we therefore "assess the correctness of OR-OSHA's interpretation without according any deference to OR-OSHA's proposed interpretation." *Id.* (citing *Dunning v. Corrections Facility Sitting Authority*, 325 Or 269, 277 n 4, 935 P2d 1209 (1997)).

methodology). As noted, OAR 437-003-0073 provides, in relevant part:

"(1) When using boom supported elevating work platforms * * *.

"(2) Workers must use personal fall protection that complies with Subdivision M of this division, when working in these devices."

First, addressing the operative language "must use personal fall protection that complies with Subdivision M," we conclude that, in context, "personal fall protection" refers not to the attendant circumstances (*i.e.*, the worker's distance from the ground) but rather to the type of equipment or precautions required. In other words, giving the words "their plain, natural, and ordinary meaning[,]" *PGE*, 317 Or at 611, "personal fall protection" patently refers to the "what" (*i.e.*, what particular fall-protection measures and equipment are required) rather than the "when" (*i.e.*, when fall-protection measures and equipment are required) associated with the use of fall-protection measures and equipment on lifts. The "when" is supplied by subsection (1): "*When* using boom supported elevating work platforms." (Emphasis added.) It is then reiterated in subsection (2): "*when* working in these devices." (Emphasis added.) Neither iteration of that language provides any indication that the director intended to reference height requirements or other circumstances; rather, the text indicates that the relevant circumstance is simply a worker's presence on a "boom supported elevating work platform" and nothing more.

Conversely, the "what" is supplied by subsection (2) via its reference to "personal fall *protection* that complies with Subdivision M" and OAR 437-003-1501's language within Subdivision M providing that "the employer shall ensure that *fall protection systems* are provided, installed, and implemented according to the criteria in [29 CFR section] 1926.502." (Emphases added.) In turn, 29 CFR section 1926.502 provides specific guidelines for fall-protection *measures and equipment*, including "[g]uardrail systems," "[s]afety net systems," "[p]ersonal fall arrest systems" (encompassing safety harnesses and lanyards), "[w]arning line systems," and other *means* of providing

for employee safety. In fact, that regulation is titled "[f]all protection *systems* criteria and practices" and refers specifically to "fall protection *systems*" throughout as illustrated above. 29 CFR § 1926.502 (emphases added). That context further reinforces the director's apparent intent to reference Subdivision M only insofar as it includes the specific requirements pertaining to "personal fall *protection*" on lifts. (Emphasis added.)

Accordingly, we conclude that the ALJ erred in reading a height requirement into OAR 437-003-0073. However, in erroneously vacating item one on that basis, the ALJ did not assess whether OR-OSHA met its burden to prove imputable constructive knowledge on the part of Vorhof. That is, while OR-OSHA's cross-petition is well-taken, we agree in part with employer's alternative argument that, "in the event that this court reverses as to the ALJ's OAR 437-003-0073(2) finding, OR-OSHA also failed to meet its burden to show that [employer] had the requisite actual or constructive knowledge of the alleged violation[ ]." While OR-OSHA did not necessarily fail to meet its burden in that regard, the knowledge element of its *prima facie* case was erroneously assessed as discussed above. We therefore remand for reconsideration in light of both the proper interpretation of OAR 437-003-0073 and the proper standard for assessing a supervisor's constructive knowledge of employees' safety violations.

In view of the foregoing discussion, with regard to item two we reverse and remand for reconsideration in light of the broader inquiry required in assessing reasonable diligence set forth in this opinion. We likewise reverse and remand the ALJ's vacation of item one so that the agency can determine, under the proper interpretation of OAR 437-003-0073, whether OR-OSHA met its burden of proving a serious violation on the part of employer—including its burden of proving imputable constructive knowledge consistent with the foregoing discussion of that issue.

Reversed and remanded on petition and cross-petition.