**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

R. WILLIAMS, Construction
Company,
                        *Petitioner,*

            v.

OCCUPATIONAL SAFETY & HEALTH
REVIEW COMMISSION; ELAINE CHAO,
Secretary of Labor,
                        *Respondents.*

No. 04-74247

OSHC No.
03-0533

OPINION

On Petition for Review of an Order of the
Occupational Safety & Health Review Comm

Argued and Submitted
September 11, 2006—San Francisco, California

Filed October 3, 2006

Before: Betty B. Fletcher and Marsha S. Berzon,
Circuit Judges, and David G. Trager,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable David G. Trager, Senior District Court Judge for the
Eastern District of New York, sitting by designation.

**COUNSEL**

Robert D. Peterson, Rocklin, California, for the petitioner.

Joanna Hull (argued), Ann Rosenthal, Joseph M. Woodward, and Howard M. Radzely, Washington, D.C., for the respondent.

## OPINION

B. FLETCHER, Circuit Judge:

Petitioner R. Williams Construction Co. ("Williams" or "the Company") petitions for review of a final order of the Federal Occupational Safety and Health Review Commission (the "Commission"), affirming violations of the Occupational Safety and Health Act ("OSHA") in the wake of a trench collapse and death of an employee at a construction site in Santa Ynez, California. We deny the petition for review.

## I

On September 19, 2002, a trench collapse at a sewer-construction project at the Chumash Casino Project in Santa Ynez, California, killed Adam Palomar, a Williams employee, and seriously injured Jose Aguiniga, another Williams employee. On the day of the collapse, the trench was ten to twelve feet deep and between three and four feet wide at the bottom. The trench was about thirteen feet wide at the top and more than forty feet long. The sides of the trench rose vertically from the bottom for approximately five feet, after which they sloped backwards at about a forty-five degree angle. An earthen slope at the west end of the trench provided the workers' only access to and egress from the bottom. Ground water seeped into the soil continuously.

Williams used a number of submersible pumps to remove the ground water that seeped into the trench. Although the pumps could be pulled up and cleaned from the top of the trench, it was the practice to do so from inside the trench. Adam Palomar and Jose Aguiniga, two Williams employees, were generally responsible for cleaning the pumps and did so as needed throughout any given workday without receiving specific instructions.

On the day before the accident, a hydraulic jack shoring system, which supported the trench wall, had been removed.

On the day of the accident, Palomar and Aguiniga entered the unshored trench to clean the pumps, remaining there for about fifteen minutes. As the two were exiting the trench, the north wall collapsed, burying Aguiniga completely and Palomar almost completely. Aguiniga died, and Palomar was severely injured.

OSHA conducted an investigation and cited the Company for safety violations. The first citation charged the Company with failing to instruct its employees in the recognition and avoidance of unsafe conditions and in the regulations applicable to their work environment, as required by 29 C.F.R. § 1926.21(b)(2). The second citation charged the Company with failing to ensure that no worker would have to travel more than 25 feet to reach a safe point of egress, as required by 29 C.F.R. § 1926.651(c)(2). The third citation charged the Company with failing to ensure that a "competent person" — i.e., one with specific training in soil analysis and protective systems and capable of identifying dangerous conditions — performed daily inspections of excavations for evidence of hazardous conditions, as required by 29 C.F.R. §§ 1926.651(k)(1). The fourth violation charged the Company with failing to ensure that the walls of the excavation be either sloped or supported, as required by 29 C.F.R. § 1926.652(a)(1).

The Secretary of Labor (the "Secretary") designated the first three violations "serious" in nature and proposed penalties of $7,000 for each violation. The Secretary designated the fourth violation "willful" in nature and proposed a $70,000 penalty, for a total penalty of $91,000.[1]

---

[1] Williams does not seek review of a fifth citation, which the ALJ affirmed without penalty, for an "other-than-serious" violation of 29 C.F.R. § 1926.651(j)(1) for failing to adequately protect employees from loose rock or soil that could fall from the excavation face.

## II

The ALJ conducted a two-day hearing, during which several Williams employees provided testimony. Sergio Lopez and Rick Dzamba stated that they did not know that Adam Palomar and Jose Aguiniga were in the unshored trench when the wall collapsed. However, both Lopez and Dzamba had provided contrary statements to the general contractor immediately after the accident, which suggested they knew that the two men were working in the unshored trench. Based on these contradictions and their demeanor during the hearing, the ALJ determined that Lopez and Dzamba were not credible.

Joseph Goforth, an employee who started working for Williams four days before the trench collapse, testified that he occasionally worked in the trench and received no training when he started work. He was not told of any rules or shown a safety manual. No one discussed safety the day of the trench collapse. Goforth testified that he received instructions from Dzamba.

Palomar testified that he worked for Williams for approximately nine months prior to the accident and had never received any training in trench safety. He testified that there was no safety meeting at the beginning of the workday on September 19, 2002. He was never told not to enter the trench and did not know who his supervisor was. He received all of his work instructions from Sergio Lopez, who acted as translator because Palomar speaks only Spanish.

Lopez testified that Dzamba was his boss; Lopez knew not to go into an unshored trench. Dzamba had read through the OSHA manuals but had no formal training as a "competent person." He had no recollection of any particular conversation warning employees not to enter the trench the day of the accident. Dzamba testified that John (J.P.) Williams was the supervisor on the job site.

John (J.P.) Williams testified that he was the supervisor at the Santa Ynez worksite and was responsible for employee safety at the site. He admitted that he never looked at the company safety manual, which was located behind the seat of his truck; he also had not been trained as an OSHA "competent person" or received any other safety training other than on the job. He was unfamiliar with OSHA sloping and trenching requirements and did not conduct any physical tests on the soil in the trench.

J.P. Williams stated that the crew talked about safety "all the time." However, he could not say when and where any specific rules — for instance, rules against entering the trench when it was unshored — were discussed. Williams stated that he and Dzamba were in charge of checking the trench the day of the accident but could not remember what, if any, warnings were provided to employees that day.

Owner Rodney Williams testified that both he and J.P. Williams were "competent" by virtue of their ability to recognize a dangerous situation, though neither was trained as an OSHA "competent person." Rodney testified that the competent person for a given day was "whoever is on the job site [and] paying attention to what's going on."

Based on the testimony at the hearing, the ALJ affirmed the citations. However, the ALJ downgraded the one "willful" violation to "serious," reducing the penalty for that particular violation from $70,000 to $7,000. The ALJ reduced the penalties for each of the remaining violations from $7,000 to $5,000, based on the fact that Williams is a small employer with no history of prior injuries or OSHA violations. This resulted in a total penalty of $22,000. The Commission denied Williams' request for discretionary review, and the Company filed a timely petition for review.

## III

We have jurisdiction under 29 U.S.C. § 660(a), and we review the Commission's findings for substantial evidence.

*Chao v. Symms Fruit Ranch, Inc.*, 242 F.3d 894, 897 (9th Cir. 2001); *see also* 29 U.S.C. § 660(a). We "must uphold the fact-finder's determinations if the record contains such relevant evidence as reasonable minds might accept as adequate to support a conclusion, even if it is possible to draw different conclusions from the evidence." *Loomis Cabinet Co. v. OSHRC*, 20 F.3d 938, 941 (9th Cir. 1994). The ALJ's findings, based upon the witnesses' testimony regarding Williams' lack of attention to safety standards, is supported by substantial evidence.

[1] Williams violated 29 C.F.R. § 1926.21(b)(2) for failing to instruct each employee in the recognition and avoidance of unsafe conditions and for failing to eliminate other hazards: Williams provided no training in trenching hazards to at least the two employees working in the trench; moreover, no Williams supervisor was familiar with OSHA regulations.

Williams argues that although Palomar testified that he did not receive instructions regarding trench safety when he was first employed by Williams, there was no evidence "that Mr. Palomar had not received instructions on trench safety on some [other] occasion during his employment with Petitioner (nine months)." Williams seems to take the position that unless the Secretary can prove the absence of a conversation on trenching hazards, substantial evidence is lacking. But the Secretary is not required to prove a negative; moreover, evidence of broad neglect of safety is sufficient to support the ALJ decision.[2]

---

[2]In its reply brief, Williams argues that the ALJ inappropriately considered Goforth's lack of training as additional evidence supporting its finding that the Company failed to instruct its employees in the recognition and avoidance of unsafe conditions. However, the citation was not limited to Palomar and Aguiniga, but applied to all Williams employees. The Company never objected to questions regarding Goforth's safety training on the ground of unfair surprise, nor did it seek a continuance to prepare itself to defend against such a claim.

**[2]** Williams also violated 29 C.F.R. § 1926.651(c)(2) by providing only one safe means of egress at the east end of the 45-foot trench. Although it appears that at least one of the pumps was located more than 25 feet away from the ramp, the exact location of the pumps, or the precise location of Palomar and Aguiniga vis-à-vis the ramp at the moment of the trench collapse, is immaterial.

**[3]** An employee working less than 25 feet from an exit may find it necessary to venture further from the egress point to satisfactorily complete a job. It is reasonably predictable that such an employee, already within a "zone of danger," will become exposed to the danger itself. Thus, we hold that this regulation applies regardless of whether the employees were exposed to the actual danger at the time of the collapse. A violation is established so long as employees have *access* to a dangerous area more than 25 feet from a means of egress. *See Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 812 (3d Cir. 1985); *see also Am. Wrecking Corp. v. Sec. of Labor*, 364 F.3d 321, 327 (D.C. Cir. 2004) (noting that the existence of a hazard, apart from employees' actual exposure to falling roof debris, could violate 29 C.F.R. § 1926.859(g)). *See also* Occupational Safety and Health Standards—Excavations, 54 Fed. Reg. 45894, 45895 (Oct. 31, 1989) (describing the 25-foot requirement as "that ladders or equivalent means of egress be provided every 25 feet horizontally"); *id.* at 45918 (responding to employer's comment that its employees do not cross trenches at 25-foot intervals with the conclusion that "OSHA has determined that a safe means of egress every 25 feet is necessary in trench excavations. . . .").

**[4]** In addition, Williams violated 29 C.F.R. § 1926.651(k)(1) for failing to designate a "competent person" with sufficient training and knowledge to identify and correct existing and predictable hazards. No supervisor at the Company was familiar with the basic standards applicable to the worksite or otherwise "capable . . . of identifying and correcting existing and predictable hazards in their surround-

ings." We disagree that the Company discharged its OSHA duties merely by relying on the general work experience of Dzamba and J.P. Williams or "common sense."

[5] The Company also violated 29 C.F.R. § 1926.652(a)(1) for failing to protect employees from cave-ins: Williams had reason to know that its employees would enter the trench on the day of the cave-in and had actual knowledge that two of its employees entered the trench prior to the cave-in. It is unavailing for Williams to argue that *employees* must take greater care to avoid placing themselves in harm's way or that management can "expect an employee . . . not [to] intentionally place himself in danger." Such a claim misconstrues the purpose of the OSHA safety standards.

## IV

[6] Williams failed to instruct its employees in proper safety measures and made no effort to ensure that employees not enter the trench on the day of the collapse. The ALJ findings, and the reasonable inferences drawn from them, easily satisfy the substantial-evidence standard. Consequently, the ALJ's decision affirming the citations is affirmed.

**PETITION FOR REVIEW DENIED.**