**133 Nev., Advance Opinion 83**

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| SIERRA PACKAGING & CONVERTING, LLC, Appellant, vs. THE CHIEF ADMINSTRATIVE OFFICER OF THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION OF THE DIVISION OF INDUSTRIAL RELATIONS OF THE DEPARTMENT OF BUSINESS AND INDUSTRY, STATE OF NEVADA; AND THE OCCUPATIONAL SAFETY AND HEALTH REVIEW BOARD, Respondents. | No. 71130 |



FILED

NOV 16 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in an occupational safety and health matter. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Reversed and remanded.*

McDonald Carano LLP, and Timothy E. Rowe, Reno,
for Appellant.

State of Nevada Department of Business and Industry, Division of Industrial Relations, and Salli Ortiz, Carson City,
for Respondent.

---

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

### OPINION

By the Court, SILVER, C.J.:

29 C.F.R. § 1910.132(f) (2011) requires employers to provide training regarding the use of personal protective equipment to employees

exposed to hazards necessitating the use of such equipment. Appellant Sierra Packaging and Converting, LLC, argues the Nevada Occupational Safety and Health Administration improperly cited it for violating 29 C.F.R. § 1910.132(f), as no facts establish that the subject employees were actually exposed to such a hazard in the course of their work or were required by that regulation to have fall protection training. In this appeal, we clarify that exposure to a hazard can be demonstrated by facts establishing that exposure to the hazard is reasonably predictable. Because we conclude the Nevada Occupational Safety and Health Review Board relied on an incorrect standard to reach its decision and the evidence must be reevaluated under the standard set forth in this opinion, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Respondent Nevada Occupational Safety and Health Administration (NOSHA)[1] received an anonymous complaint alleging, in relevant part, that appellant Sierra Packaging and Converting, LLC (Sierra Packaging), violated NOSHA's health and safety regulations by allowing employees to climb on warehouse racks without personal protection equipment (PPE). Pictures of three employees on the racking without PPE accompanied the complaint.

Jennifer Cox, an enforcement officer for NOSHA, investigated the complaint. The men in the pictures were three temporary maintenance personnel hired through a subcontractor and working under maintenance manager Steve Tintinger. At the time, Sierra Packaging had

---

[1]When referring to the Occupational Safety and Health Administration of other states or the federal government, we use the more general term "OSHA."

just moved to a new location and hired the temporary help for the move. Sierra Packaging also hired another company to install the warehouse racking at its new location, but that company failed to install metal stabilization plates on the racking.

The three employees, assisted by a company interpreter, spoke to Cox regarding the photograph depicting them on the racking without PPE. The employees stated that they had been instructed to install the metal plates that were missing in the racking. Two employees admitted that they were not supposed to climb on the racking; one stated that he had actually been standing on a ladder next to the racking and the other did not say whether he had been standing on the racking. The third employee, however, admitted to Cox that he was in fact standing on the racking without PPE. All three were visibly nervous. One of the employees asserted Tintinger ordered them onto the racks to complete the task and told them to use ladders and PPE. But another stated that the subcontractor who hired the three men ordered them to install the metal plates. The third employee's statement is silent on this point.

When Cox inquired about the PPE, the men stated that "the employer" provided them with PPE, and one of them retrieved a harness system and shop pack. At least one employee indicated he had undergone safety training provided in Spanish. Although the three men knew how to don and inspect the PPE, Cox discovered that none of them understood how to utilize the equipment.

Cox also interviewed management, including Tintinger, and learned that management did not know the PPE's limitations. At the conclusion of the investigation, Cox recommended NOSHA cite Sierra

COURT OF APPEALS
OF
NEVAOA

(O) 1947B

Packaging for a "serious"[2] violation of 29 C.F.R. § 1910.132(f) (2011) for failing to provide adequate training regarding PPE. Thereafter, NOSHA issued a citation with notification of penalty for $3,825.

Sierra Packaging contested the citation and the Nevada Occupational Safety and Health Review Board (the Board) held an evidentiary hearing. NOSHA presented evidence, including the anonymous complaint accompanied with pictures of the three men standing on the racking, along with Cox's testimony and report. NOSHA argued that "[t]he only thing that matters is that these employees . . . had the fall protection equipment but they didn't know how to properly use it." Conversely, Sierra Packaging generally denied NOSHA's allegations, arguing the citation was improper because the employees did not actually need PPE to perform their job duties. But Sierra Packaging acknowledged that maintenance workers sometimes needed PPE, and Tintinger at one point admitted that he may have directed the three employees to install the metal plates on the racking. In its written decision concluding Sierra Packaging failed to adequately train the employees, the Board focused on the employees' access to the PPE. The Board found that Sierra Packaging's evidence was not credible, and upheld NOSHA's citation. In resolving Sierra Packaging's subsequent petition for judicial review, the district court agreed with the Board's conclusion and held that the "Board has taken the reasonable stance that when an employer provides fall protection equipment, it must also provide the training on the safe use of such equipment." This appeal followed.

_____

[2]There are several categories of OSHA violations, and the penalties vary for the type of violation. *See generally* NRS Chapter 618; 51 C.J.S. *Labor Relations* § 42 (2017).

## *ANALYSIS*

Sierra Packaging argues that the Board disregarded the plain language of 29 C.F.R. § 1910.132(f)(1), a regulation mandating training for employees required to use PPE. On appeal, Sierra Packaging does not dispute that the three employees were inadequately trained; rather, Sierra Packaging argues that no facts established that the employees were required to be trained under 29 C.F.R. § 1910.132(f). NOSHA counters that, because the evidence established that Tintinger instructed the workers to use PPE, and the employees had access to PPE, 29 C.F.R. § 1910.132(f) requires that the employees must also be trained in using PPE.

When reviewing an agency's decision, we, like the district court, consider whether the decision was affected by an error of law or was "an arbitrary and capricious abuse of discretion." *Law Offices of Barry Levinson, P.C. v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 383 (2008); *see also* NRS 233B.135(3)(d), (f); *State Tax Comm'n v. Am. Home Shield of Nev., Inc.*, 127 Nev. 382, 385-86, 254 P.3d 601, 603 (2011). If the agency's decision rests on an error of law and the petitioner's substantial rights have been prejudiced, this court may set aside the decision. *State, Private Investigator's Licensing Bd. v. Tatalovich*, 129 Nev. 588, 590, 309 P.3d 43, 44 (2013). Our review is limited to the record before the agency, *Gandy v. State ex rel. Div. of Investigation & Narcotics*, 96 Nev. 281, 282, 607 P.2d 581, 582-83 (1980), and we will overturn the agency's factual findings only if they are not supported by substantial evidence. NRS 233B.135(3)(e), (f); *City of N. Las Vegas v. Warburton*, 127 Nev. 682, 686, 262 P.3d 715, 718 (2011). Substantial evidence is that "which a reasonable mind might accept as adequate to support a conclusion." NRS 233B.135(4); *Nev. Pub. Emps.' Ret. Bd. v. Smith*, 129 Nev. 618, 624, 310 P.3d 560, 564 (2013).

We review questions of statutory construction de novo. *I. Cox Constr. Co., LLC v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013). We first look to the statute's plain language, and we "construe the statute according to its fair meaning and so as not to produce unreasonable results." *Id.* Ordinarily we will defer to the agency's interpretation of its governing regulations, so long as the agency's interpretation is within the language of the statute. *Taylor v. Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013).

29 C.F.R. § 1910.132 (2011), in relevant part, states:

> (a) Application. Protective equipment, including personal protective equipment . . . , shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment[.]
>
> . . . .
>
> (d) Hazard assessment and equipment selection.
>
> (1) The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE).
>
> . . . .
>
> (f) Training.
>
> (1) The employer shall provide training to each employee who is required by this section to use PPE. Each such employee shall be trained to know at least the following: . . .
>
> (iv) The limitations of the PPE.

The plain language of this regulation mandates training when the employee is "required by this section" to use PPE. Under subsections (a) and (d), PPE is required as "necessary" to protect against hazards. Accordingly, the citation was proper if the employees' work exposed them

to a hazard that required the use of PPE—here, if the employees were exposed to heights that necessitated the use of fall protection equipment.

29 C.F.R. § 1910.132 does not, however, clarify what evidence NOSHA must present to show exposure to the hazard. Although Nevada's appellate courts have not yet addressed this question, other jurisdictions have held that, where a regulation requires exposure to a hazard, evidence of actual exposure is not required so long as the record demonstrates exposure was reasonably predictable. *See Or. Occupational Safety & Health Div. v. Moore Excavation, Inc.*, 307 P.3d 510 (Or. Ct. App. 2013).

In *Moore Excavation*, for example, the Oregon Occupational Safety and Health Division cited a company under 29 C.F.R. § 1926.1053(b)(16) for failing to tag as defective a damaged ladder and remove it from service. *Id.* at 511. In reviewing the administrative law judge's decision to vacate the citation, the Oregon Court of Appeals addressed the burden of proof for that state's OSHA to show exposure to the hazard. *Id.* at 514-16. The appeals court relied on the "rule of access" promulgated by the federal Occupational Safety and Health Review Committee, which the appeals court held "ultimately requires, simply, that the agency prove that it was *reasonably predictable* that one or more employees had been, were, or would be exposed to the hazard presented by the violative condition at issue." *Id.* at 516; *see also Gilles & Cotting, Inc.*, 1976 CCH OSHD ¶ 20,448, ¶ 24,425 (No. 504, 1976) ("On balance we conclude that a rule of access based on reasonable predictability is more likely to further the purposes of the Act than is a rule requiring proof of actual exposure."). The appeals court noted that this standard requires more than a mere showing of access to the hazard, but less than proof of actual exposure. *Moore Excavation*, 307 P.3d at 517.

Similarly, the United States Court of Appeals for the Fourth Circuit, while not using the term "rule of access," explained that, in establishing an exposure to a hazard under 29 C.F.R. § 1926.501(b)(1), OSHA must show a reasonable predictability that the employees either were, or would be, in the "zone of danger." *N&N Contractors, Inc. v. Occupational Safety & Health Review Comm'n*, 255 F.3d 122, 127 (4th Cir. 2001). The United States Court of Appeals for the Ninth Circuit likewise addressed employee exposure to the "zone of danger," concluding that proof of actual exposure to the danger was unnecessary to establish a violation of 29 C.F.R. § 1926.651(c)(2) where the evidence showed it was reasonably predictable that the employees would be exposed to the danger. *R. Williams Constr. Co. v. Occupational Safety & Health Review Comm'n*, 464 F.3d 1060, 1064 (9th Cir. 2006).

Although these cases do not address 29 C.F.R. § 1910.132, the cases suggest a common theme that may be applied to that regulation: where a rule requires OSHA to demonstrate employee exposure to a hazard, OSHA meets its burden of proof by showing that it is reasonably predictable that the employee was or would be exposed to the hazard in the course of the employee's work. Importantly, this rule comports with the language of 29 C.F.R. § 1910.132, a regulation focusing on the potential for and probability of employee exposure to hazards, rather than actual exposure. We therefore agree with the analysis set forth in *Moore Excavation* and hold that where NOSHA is required to show exposure to the hazard, NOSHA meets its burden of proof by demonstrating that it is

reasonably predictable that the employees were or would be exposed to the hazard.[3]

In the present case, the Board employed an incorrect standard in rendering the underlying decision. Under 29 C.F.R. § 1910.132, the citation was proper if the employees' work exposed them to a hazard that required the use of PPE. Pursuant to the "rule of access," NOSHA could meet its burden of proof here by showing it was reasonably predictable that the employees were or would be exposed to hazardous heights necessitating the use of PPE. Yet instead of focusing on exposure to heights necessitating the use of PPE, the Board predicated its decision on the employees' access to the PPE and concluded this access triggered 29 C.F.R. § 1910.132(f)'s training requirement. Under the "rule of access," however, this training requirement only comes into play if it was reasonably predictable that the employees were or would be exposed to hazardous heights requiring the use of PPE. As a result, we reject the Board's interpretation of 29 C.F.R. § 1910.132 and conclude that its resulting decision was grounded in an error of law that, in this case, infected the proceedings and consequently prejudiced Sierra Packaging's substantial rights. *See Tatalovich*, 129 Nev. at 590, 309 P.3d at 44.

Pursuant to the "rule of access" we adopt today, the propriety of the citation against Sierra Packaging needs to be reexamined under the reasonable predictability standard, but this analysis must be carried out by the Board in the first instance, as it is well established that courts may not reweigh the evidence in reviewing an administrative decision. *See Nellis*

---

[3]We note the district court addressed *Moore Excavation* and the "rule of access," although the district court, like the Board, focused on the employees' access to the PPE.

*Motors v. State, Dep't of Motor Vehicles*, 124 Nev. 1263, 1269-70, 197 P.3d 1061, 1066 (2008) (providing that an appellate court reviewing an administrative decision will not reweigh the evidence or reassess witness credibility). Accordingly, we reverse and remand this case to the district court with instructions to remand this matter to the Board to reevaluate the evidence and reconsider its decision under the standard set forth in this opinion.

## CONCLUSION

We adopt the "rule of access" standard as articulated in *Moore Excavation*. Under this standard, when a statute or regulation requires NOSHA to establish employee exposure to a hazard, the Board's decision regarding a NOSHA citation may be upheld if NOSHA presents substantial evidence demonstrating that exposure to the hazard was or would be reasonably predictable. Here, because the Board applied an incorrect standard in evaluating the citation, we reverse and remand this case to the district court for it to remand this matter back to the Board for further proceedings in accordance with this opinion.

_____, C.J.
Silver

I concur:

_____, J.
Gibbons

TAO, J., concurring:

I agree with my colleagues that Nevada OSHA (NOSHA) erred by applying a circular legal standard under which an employer's duty to train kicks in whenever employees have access to safety equipment regardless of whether any hazard is present or not, rather than the better "rule of access" under which the duty to train arises only when it's reasonably predictable that employees will actually be exposed to some hazard that could hurt them. I therefore fully join the very thorough and well-reasoned majority opinion that explains NOSHA's error quite well.

But I would go a step further and find that there's a second, larger problem here that ought to be thought through on remand before this case goes any further. Although not quite pressed by the parties on appeal (and, hence, why it's not the subject of the principal opinion), it appears to me that NOSHA overstepped its regulatory authority by levying a fine pursuant to an excessively broad and non-textual interpretation of 29 C.F.R. § 1910.132, a regulation that, fairly read, doesn't apply to the conduct at issue. This case might therefore be ripe for dismissal because Sierra's conduct didn't violate the terms of § 1910.132 as actually written.

There's an ongoing and active debate over how much quasi-legislative power Congress can constitutionally delegate to executive branch agencies, and how much deference courts owe to those agencies when they engage in the quasi-judicial task of interpreting the law. *See Gutierrez-Brizuela v. Lynch*, 834 F.2d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring) (questioning the constitutionality of *Chevron* deference as violating the principle of separation of powers); *Waterkeeper All. v. Envir. Protect. Agency*, 853 F.3d 527, 539 (D.C. Cir. 2017) (Brown,

J., concurring) ("An Article III renaissance is emerging against the judicial abdication performed in *Chevron*'s name. If a court could purport fealty to *Chevron* while subjugating statutory clarity to agency 'reasonableness,' textualism will be trivialized."). *Cf. Tom v. Innovative Home Sys., LLC*, 132 Nev. ___, ___, 368 P.3d 1219, 1230 (Ct. App. 2016) (Tao, J., concurring) (noting practical problems with treating executive-branch advisory opinions as if they were judicial decisions). This appeal goes to the very heart of that debate, as I would conclude that NOSHA's case against Sierra requires § 1910.132 to be interpreted in a way that exceeds any authority actually delegated by Congress.

## I.

NOSHA filed its complaint against Sierra in September 2013, and issued its decision imposing a fine in April 2014. These dates matter because the regulation was significantly changed in November 2016 to add 29 C.F.R. § 1910.140, a new section that specifically addressed "personal fall protection systems." But this section didn't exist before 2016, so Sierra couldn't have violated it in 2013.

Prior to 2016, 29 C.F.R. § 1910.132 was limited to addressing chemical and environmental hazards that injure when breathed in or when in contact with skin, ears, face, or eyes. When these hazards are present, employers must provide personal protective equipment (PPEs), along with training in how to use them, to all exposed employees.

But NOSHA didn't charge Sierra with failing to provide PPEs to employees facing potential injury from toxic environmental hazards. It charged Sierra with failing to provide PPEs to employees working on an elevated platform from which they could have fallen. But § 1910.132 has nothing to do with this kind of danger, and the PPEs that § 1910.132

describes wouldn't have prevented anyone from either falling or being hurt if they did.

## II.

The place to start is with the plain text of § 1910.132. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("[t]he words of a governing text are of paramount concern"). The scope of both the current and pre-2016 versions of § 1910.132 is defined in paragraph (a), the "application" paragraph of the regulation. Paragraph (a) states:

> *Application.* Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

NOSHA contends that the phrase "hazards of processes or environment" is broad enough to encompass placing employees in situations where a dangerous fall is reasonably predictable. Is NOSHA correct?

The answer seems to me to be: NOSHA is correct only if the lengthy phrase that closes the paragraph—"encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact"—is read to qualify merely the term "mechanical irritants" that immediately precedes it, and nothing else.

But I don't read it that way. To me, the most natural meaning of the closing phrase is that it's intended to qualify the entire list of hazards set forth in paragraph (a), and not just the very last item on the list. In other words, a violation of § 1910.132(f) can occur only if a hazard capable of causing injury "through absorption, inhalation or physical contact" is present. Read that way, § 1910.132 was designed to address possible harm resulting from environmental hazards such as chemicals and irritants or small objects flying about in the workplace that might injure someone through skin contact or inhalation. The regulation has nothing to do with preventing employees from falling from high places.

### III.

Why do I read the pre-2016 regulation that way?

First, reading it the way NOSHA wants us to would mean that the first item in the list of hazards, "hazards of processes or environment," just dangles there with no additional definition or qualifier. But that reading makes the phrase so broad and imprecise that it can cover any kind of workplace "hazard" at all: noxious chemicals, slips and falls, slicing injuries, malfunctioning machines, surly junkyard dogs running about, and even attacks by deranged assassins or terrorists within the "environment" of the workplace. And if the initial item on the list were intended to have been so broad, then the entire rest of the list would be totally unnecessary. Yet "no part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided." *Indep. Am. Party v. Lau*, 110 Nev. 1151, 1154, 880 P.2d 1391, 1392 (1994) (quoting *Paramount Ins., Inc. v. Rayson & Smitley*, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970)).

Second, the types of PPEs specifically set forth throughout the pre-2016 version of 29 C.F.R. § 1910.132 consist of things like "eyewear"

(paragraph (h)(2)), "metatarsal guards" (paragraph (h)(3)), "protective clothing" (paragraph (a)), "respiratory devices" (paragraph (a)) and "protective shields" (paragraph (a)). These are things that have nothing to do with preventing employees from falling from heights, but quite a lot to do with chemical or respiratory hazards that injure via absorption, inhalation, and skin contact.

Third, the overall structure of the pre-2016 version of Title 29 assigns the risk of employee falls to Subparts "D" and "F." For example, 29 C.F.R. § 1910.28(a)(1) of Subpart "D" describes the subpart as "requir[ing] employers to provide protection for each employee exposed to fall and falling object hazards." 29 C.F.R. § 1910.28(b)(1)(i) further clarifies a "fall hazard" as arising when employees are on a "walking-working surface with an unprotected side or edge that is 4 feet (1.2 m) or more above a lower level . . . ." But the provision that Sierra was charged with violating isn't located anywhere within this subpart. Instead, § 1910.132 is located several subparts away, in Subpart "I" (and, notably, immediately preceded by Subpart "H" addressing "Hazardous Materials"). NOSHA's argument moves a provision from one subpart to the other. But we aren't supposed to read regulations that way. Quite to the contrary, "[i]f possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Scalia & Garner, *supra*, at 174 (footnote omitted).

Furthermore, NOSHA's interpretation of § 1910.132(a) would give it breathtaking scope and reach. Subpart "D" defines a "fall hazard" as occurring only at four feet or higher. But according to NOSHA, the

"hazard" of § 1910.132(a) of Subpart "I" includes no height limitation, so apparently it kicks in at any height. Thus, PPEs and PPE training are required whenever an employee steps on anything even mere inches above floor level—footstools, benches, even the single step of a staircase; every employee now needs a PPE to walk up or down a stairway. Would it apply to an employee who stands on his tippy-toes to reach something without a PPE? If § 1910.132(a) means what NOSHA says it does, there's nothing to prevent NOSHA from prosecuting that as a violation, as utterly absurd as that seems.

In short, the most plain and natural reading of the entirety of the pre-2016 version of 29 C.F.R. § 1910.132 is that it's limited to hazards that cause injury through "absorption, inhalation or physical contact," and doesn't cover the risk of falling created by having employees work in high places. NOSHA cited and relied upon the wrong regulation in imposing its fine, and it's no longer clear what the outcome might have been had it cited one that did apply (perhaps, but not certainly, subpart "D") and allowed Sierra to mount a defense against it.

IV.

Nonetheless, NOSHA argues that its legal interpretation of the regulations at issue ought to be given deference. That's true, to a point. But only to a point. Courts give deference only to agency interpretations of law that are "reasonable" and within the language of the governing regulation and statutes. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also Taylor v. Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013) (under the Nevada Administrative Procedures Act, courts defer to agency interpretations of their governing statutes or regulations if the interpretation is within the language of the statute).

NOSHA's interpretation strikes me as neither; it's an interpretation that re-writes a clear regulation of relatively limited scope into an ill-defined one of almost boundless and unlimited scope, with scant regard for the actual text. If we're required to give deference to an interpretation as far-reaching and atextual as this one with precious little judicial review over the end result, I wonder if Judge (now Justice) Gorsuch wasn't right to question whether it makes constitutional sense to give so much power to interpret the meaning of a regulation to the very agency charged with prosecuting alleged violations of it. *See Gutierrez-Brizuela*, 834 F.2d at 1149.

The very purpose of requiring that federal regulations be published for all the world to see is to give fair notice to potential violators of the precise conduct prohibited under pain of administrative sanction. *See* Oliver W. Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 459 (1897) (written law serves to notify when the state will bring its force to bear, and "a bad man has as much reason as a good one" to want to know when "the axe will fall"). Congress delegated some rule-making power in this arena to federal OSHA to define what conduct ought to be punished. But once OSHA exercised that delegated power and promulgated something into the Code of Federal Regulations, I doubt that Congress intended that its state counterparts could subsequently re-cast the meaning of those words on the fly, totally ad hoc, under the rubric of "agency interpretation," in order to penalize some unrelated conduct that OSHA's own published words don't reasonably cover. That strikes me as the very definition of "arbitrary," not to mention a serious due process problem to boot.

Once written, words are supposed to have a fixed meaning that ought to be more or less understandable to any reasonable person endeavoring to read them with an eye toward avoiding penalty. *See* Scalia & Garner, *supra*, at 78 ("Words must be given the meaning they had when the text was adopted."). It's true that litigants and lawyers may, and constantly do, argue over shades of meaning when the written words are unclear. But when words are clear, what shouldn't be the subject of argument is whether they have any definite meaning at all. Government agencies aren't supposed to be able to prosecute anyone they want whether or not the targeted conduct bears any relation to words published anywhere in any regulation or statute. Law isn't a looking-glass world where words mean whatever happens to be most convenient in one moment and something very different in the next. *See* Lewis Carroll, *Through the Looking-Glass* 188 (Signet Classic 2000) ("'When *I* use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.'").

OSHA drafted a regulation and made it law through the regular procedures of the Administrative Procedures Act. Having done so, it (and its state counterpart agencies) ought to stand by the original meaning of its own regulation and not try to make it now mean something else. *Cf.* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2150 (2016) ("*Chevron* encourages the Executive Branch (whichever party controls it) to be extremely aggressive in seeking to squeeze its policy goals into ill-fitting statutory authorizations and restraints.").

## V.

Consequently, while I fully agree that a remand is necessary, on remand I would suggest that the parties and the Board seriously

COURT OF APPEALS
OF
NEVADA

(O) 1947B

reconsider whether the words of the regulation relied upon by NOSHA bear any reasonable relationship to Sierra's conduct or whether instead this entire case shouldn't just be dismissed outright.

_____, J.
Tao

COURT OF APPEALS
OF
NEVADA

(O) 1947B